LYNCH *v.* BRIGGS MANUFACTURING COMPANY.

1. WORKMEN'S COMPENSATION—TOTAL DISABILITY—FINDING—EVIDENCE.

Finding of total disability on part of plaintiff as a skilled steam fitter *held,* supported by evidence presented in his proceeding to recover workmen's compensation.

2. SAME—PURPOSE OF ACT.

The purpose of the workmen's compensation act is to provide compensation for disability resulting from an occupational injury (CL 1948, § 411.1 *et seq.*).

3. SAME—SET-OFF OF WAGES EARNED.

An employer is permitted, under the workmen's compensation act as it now stands, to set off, against compensation payable, the employee's "wage-earning capacity" after the injury (CL 1948, § 412.11).

4. SAME—STEAM FITTER—FAVORED WORK—WAGE-EARNING CAPACITY.

Favored work after being totally disabled does not establish the wage-earning capacity of a steam fitter in the skilled occupation in which he was engaged at time of compensable injury.

REFERENCES FOR POINTS IN HEADNOTES

[1, 3–7] 58 Am Jur, Workmen's Compensation, § 283.
[1, 3–7] What amounts to total incapacity within workmen's compensation acts. 67 ALR 785; 98 ALR 729.
[2] 58 Am Jur, Workmen's Compensation, § 2.
[3, 5] 58 Am Jur, Workmen's Compensation, §§ 286, 312.
[5] Workmen's compensation: Right to compensation as affected by refusal to accept, or failure to seek, other employment, or by entering into business for oneself after injury. 63 ALR 1241.

5. SAME—STEAM FITTER—REFUSAL TO DO FAVORED WORK—PHYSICAL ABILITY.

   An employee totally disabled from doing work as a steam fitter, his occupation when injured, could not be awarded workmen's compensation if he refused favored work provided by the employer, if physically able to perform such favored work.

6. SAME—PARTIAL DISABILITY—NONOCCUPATIONAL DISEASE—PERMANENT DISABILITY—CONTINUANCE OF PAYMENTS.

   An employee, entitled to compensation for partial disability, cannot be awarded an increase in compensation because of a subsequent nonoccupational disease creating permanent disability, but the partial disability payments may be continued.

7. SAME—STEAM FITTER—FAVORED WORK—PHYSICAL ABILITY.

   Steam fitter who had been totally disabled from performing his occupation by the compensable injury does not lose his right to compensation for period during which he was prevented from performing favored work by reason of events not under his control.

8. SAME—AWARD—STATUTE OF LIMITATIONS.

   Award of compensation for total disability from March 26, 1946 to September 7, 1946 and from November 13, 1946 to April 16, 1947 and from May 22, 1947, until further order of the workmen's compensation commission on third application filed April 23, 1948, *held,* under circumstances, to violate 1-year statute of limitations as to the first 2 periods, but not as to third (CL 1948, § 413.14).

   BOYLES, C. J., and CARR and SHARPE, JJ., dissenting.

Appeal from Workmen's Compensation Commission. Submitted April 12, 1950. (Docket No. 6, Calendar No. 44,420.) Decided December 5, 1950.

Denver C. Lynch presented his claim for further compensation against Briggs Manufacturing Company and Aetna Casualty & Surety Company, for injuries suffered while in its employ. Award to plaintiff. Defendants appeal. Affirmed and remanded.

*Marcus, Kelman & Loria* and *James Montante,* for plaintiff.

*Lacey, Scroggie, Lacey & Buchanan,* for defendants.

BUSHNELL, J.   Plaintiff Denver C. Lynch was an employee of defendant Briggs Manufacturing Company.   He is about 59 years of age and a steam fitter by trade.   While so employed by Briggs he sustained a compensable injury on March 26, 1946, when an 800-pound washbowl fell against him and fractured his left knee.   He was hospitalized for about 3 months and was voluntarily paid total compensation until September 7, 1946.   He then returned to Briggs, where he was given favored work at his skilled rate of pay.   His injured knee "flies out of place" so that he cannot do overhead work or any that requires climbing.

On October 3, 1946, he applied for a hearing and adjustment of this claim.   The hearing was scheduled for February 11, 1947.   On November 13, 1946, he was assaulted, robbed, and his jawbone was broken. He was again hospitalized until April of 1947.   During this time his application for hearing was withdrawn.   Lynch returned to work at favored employment in April, 1947, still suffering, however, from his knee disability.   His so-called "trick knee" was described by plaintiff's physician as a "marked lateral instability of the knee joint, with looseness of the medial and lateral collateral ligaments of the knee joint."   The employer's medical witness described this condition as "knock-knee" or *"genu valgum."*   On May 5, 1947, he filed a second application for a hearing which was scheduled for August 28, 1947.

While standing in a safety zone near the Briggs plant with another workman on May 27, 1947, an automobile came directly towards them.   The other man jumped out of the way but when Lynch attempted to jump, his injured knee slipped out of

place and he was struck by the car. As a result his left leg was broken. While still in the hospital with this injury, his second application was dismissed on September 2d "for lack of prosecution."

He filed a third application on April 23, 1948. His leg was then still in a cast and he had not yet been able to resume any kind of work. The hearing on June 24, 1948 resulted in a denial of compensation by the deputy commissioner. On review the commission held that Lynch was "entitled to compensation of $21 a week for total disability from November 13, 1946 to April 16, 1947 and from May 22, 1947 until further order of the commission." The order of the commission, however, reads: "$21 per week for total disability from March 27, 1946 to September 7, 1946, from November 13, 1946 to April 16, 1947 and from May 22, 1947 until the further order of the commission."

The commission determined that Lynch was totally disabled as a skilled steam fitter in March of 1946, and that his favored work thereafter did not establish a wage-earning capacity "as a steam fitter, the skilled occupation in which he was engaged when the injury occurred." Defendant was granted leave to appeal from this award.

The appellant claims that there was no proof of total disability; that Lynch was not entitled to compensation because his present loss of earnings is due to a disability unassociated with his employment; and that the commission should not have granted compensation for a period of more than 1 year prior to the filing of plaintiff's last (third) application.

The finding of Lynch's total disability as a skilled steam fitter is supported by the evidence.

The purpose of the workmen's compensation act (CL 1948, § 411.1 *et seq.* [Stat Ann § 17.141 *et seq.*]) is to provide compensation for disability resulting from an occupational injury. Prior to the 1927

amendment to the act, Lynch would have received compensation even though he worked at another job paying higher wages. *Geis* v. *Packard Motor Car Co.*, 214 Mich 646. A subsequent amendment to part 2, § 11, altered this situation. See CL 1948, § 412.11 (Stat Ann 1949 Cum Supp § 17.161).

Under this proviso the employer is permitted to set off, against compensation payable, the employee's "wage-earning capacity" after the injury. *MacDonald* v. *Great Lakes Steel Corp.*, 268 Mich 591, 594; *Markey* v. *S. S. Peter & Paul's Parish*, 281 Mich 292, 298; and *Parling* v. *Motor Wheel Corp.*, 324 Mich 420.

Lynch's favored work after his total disability did not, however, establish his wage-earning capacity. *Smith* v. *Pontiac Motor Car Co.*, 277 Mich 652, 657. Nevertheless, if physically able to perform the favored work, he could not be awarded compensation if he refused such work. *Pigue* v. *General Motors Corp.*, 317 Mich 311. An employee, entitled to compensation for partial disability, cannot be awarded an increase in compensation because of a subsequent nonoccupational disease creating permanent disability, but the partial disability payments may be continued. *Dunavant* v. *General Motors Corp.*, 325 Mich 482.

Lynch at the time of hearing was not physically capable of performing the favored work. He was prevented from doing so by events not under his control. Yet he was still totally disabled in his skilled employment because of his occupational injury of 1946. Supervening events, stopping his favored work and not attributable to him, will not defeat his compensation as a skilled employee. *Ward* v. *Heth Brothers*, 212 Mich 180; *Letourneau* v. *Davidson*, 218 Mich 334; *Neal* v. *Stuart Foundry Co.*, 250 Mich 46; *Cundiff* v. *Chrysler Corp.*, 293 Mich 404; and *Parling* v. *Motor Wheel Corp., supra.*

Lynch was voluntarily paid compensation until September 7, 1946. He later filed three separate applications for compensation. The first was withdrawn on application of his counsel, and the second was dismissed "for lack of prosecution." The third application filed on April 23, 1948, is the only one involved in the present proceedings.

The power of the commission to award compensation is expressly limited by the following applicable statutory provision:

"If payment of compensation is made (other than medical expenses) and an application for further compensation is later filed with the commission, no compensation shall be awarded by the commission for any period which is more than 1 year prior to the date of the filing of such application." CL 1948, § 413.14 (Stat Ann 1949 Cum Supp § 17.188).

Under this statutory provision the period for which compensation could be awarded in the instant case could not extend retroactively beyond 1 year prior to April 23, 1948, the date upon which plaintiff's present petition was filed. It follows that the award of the commission for March 27, 1946, to September 7, 1946, and for November 13, 1946, to April 16, 1947, must be vacated; but the award "from May 22, 1947 until the further order of the commission" should be and is affirmed.

The cause is remanded to the workmen's compensation commission for entry of an award in accordance herewith.

REID, NORTH, and DETHMERS, JJ., concurred with BUSHNELL, J.

SHARPE, J. (*dissenting*). I am not in accord with the opinion of Mr. Justice BUSHNELL. The established facts in this case are that plaintiff sustained

a compensable injury on March 26, 1946, and was paid compensation until September 7, 1946, when he returned to work at favored employment at the same rate of pay he was receiving at the time of the injury. He could have continued at this favored work except for 2 subsequent injuries which are not in any way related to his employment. His present incapacity to work and earn wages was occasioned by injuries received in November, 1946 and May, 1947 and of these latter injuries neither was received by any service being rendered his employer. The opinion in this case attempts to overrule our decisions in *Pigue* v. *General Motors Corp.*, 317 Mich 311 and *Dunavant* v. *General Motors Corp.*, 325 Mich 482.

In the *Pigue Case* plaintiff sustained an injury while in defendant's employ and was paid compensation. He was later given lighter employment at wages equal to or higher than he was receiving at the date of his injury. A labor union of which plaintiff was a member called a strike and plaintiff was out of employment. He sought compensation for the strike period. In denying an award we again affirmed what we said in *Levanen* v. *Seneca Copper Corp.*, 227 Mich 592:

"The test of an injured employee's right to compensation is his inability by reason of the accident to work and earn wages in the employment at which he was engaged when injured."

In deciding the *Pigue Case,* we said:

"In the case at bar plaintiff could have continued his employment under the same terms and conditions as existed prior to going out on strike. The incapacity of plaintiff to earn wages during this period was not occasioned by his previous injury, but by the intervention of a labor union of which he was a member. Employment for plaintiff was available under conditions existing prior to the strike. Plain-

tiff is thus in the position of having refused employment until those conditions were modified. Plaintiff's employment did not cease by reason of any overt act upon the part of his employer or because of his inability to work by reason of his accidental injury."

In the *Dunavant Case,* plaintiff sustained an injury to his left hand which arose out of and in the course of his employment. Compensation was paid for such injury. Later plaintiff was given light work at wages equal to what he received prior to his injury. Subsequently, plaintiff was awarded compensation for partial disability and later filed a petition for total disability because of a recurrence of pulmonary tuberculosis with which he had been previously afflicted. No claim was made that his tubercular condition had any relationship to the injury to his hand. In reversing an award for compensation, we said:

"In the case at bar it must be said that plaintiff's inability to work at the favored employment given him by defendant did not result 'by reason of his accidental injury.' Neither was he prevented from continuing in such employment by any act on the part of the employer. As before noted, it is undisputed that plaintiff could have continued to work had it not been for the recurrence of pulmonary tuberculosis from which he had suffered at a prior time. Had favored employment not been available to him, a different situation would be presented. *Coleman* v. *Whitehead & Kales Co.,* 268 Mich 412; *Hood* v. *Wyandotte Oil & Fat Co.,* 272 Mich 190; *Cundiff* v. *Chrysler Corp.,* 293 Mich 404."

In the case at bar and the 2 cases above referred to, employment was available to plaintiffs under favorable conditions. In all cases the refusal to work or incapacity to work stemmed from causes not related to the original injury. In all cases, plaintiffs'

employment did not cease by reason of any overt act upon the part of their employers. In all cases there had been no loss of wage-earning capacity as a result of a compensable injury. In all cases the loss of earnings is due entirely and solely to intervention of independent causes.

Plaintiff relies upon *Ward* v. *Heth Brothers,* 212 Mich 180. In that case plaintiff was awarded compensation for an injured ankle and was later committed to an insane hospital. The commission found that at the time of the commitment plaintiff was partially incapacitated by reason of his injured ankle. Defendants filed a petition to discontinue partial payments because plaintiff was in the hospital. Upon appeal we there said:

"We doubt if defendants really claim that, simply, the intervening insanity would relieve them from liability. We understand their real position to be that the disability from which claimant has suffered since April 23, 1919, was due to disease and not the injury of February 12, 1916. However, we are of the opinion that the position of plaintiff upon that subject is fully sustained by the authorities cited. In other words, that the supervening insanity of the plaintiff does not justify defendants in stopping payment of compensation."

It is to be noted that the above case is no authority for increasing or granting compensation. It is authority for the position that where plaintiff is entitled to compensation for partial disability for an injury it may not be discontinued by reason of subsequent insanity.

In *Letourneau* v. *Davidson,* 218 Mich 334, plaintiff was awarded compensation for a personal injury. Subsequently, defendant filed a petition to stop compensation because plaintiff had fully recovered from the injuries suffered. The commission reduced the award after finding that plaintiff's then disability

was the result of the original injury and from conditions of old age. The Court reversed the award and said (p 340):

"The provisions of our statute by which the amount of compensation is to be determined are applicable to all ages. The amount to be awarded is in no way dependent upon the probability of a more speedy and complete recovery by a person young in years than by one of advanced age. It depends entirely upon the nature and extent of the disability and the wages earned. So long as the disability continues, the payments must continue, within the limits fixed by the act. Any attempt to determine that a part of the disability is due to an injury from which there has not been a recovery and a part to conditions incident to old age would be entering upon a field of speculation which we think neither the board nor this Court should be at liberty to explore."

In *Neal* v. *Stuart Foundry Co.*, 250 Mich 46, plaintiff was granted an award for compensation and later confined to a jail. We there held that confinement to jail was not a sufficient reason for suspending compensation. We there said:

"During a portion of the period for which compensation has been allowed, plaintiff was confined in the Wayne county jail. The defendants urged that the weekly award for that period should be suspended because the award is in lieu of earnings, and while the injured employee is in jail he has no earning capacity and hence he should receive nothing through the award. We think the administration of the workmen's compensation law (CL 1915, § 5423 *et seq.*) should not be thus complicated or its effectiveness thus impaired. Such a theory could hardly be logically applied in cases of total disability. There the award is based on the theory of complete inability of the employee to continue his usual vocation; but being in jail could hardly increase his al-

ready total inability.    If the arrested employee were able to give bail he would continue to receive the compensation under defendants' theory, but if he could not give bail both he and his dependents would be deprived of even the partial income represented by the award.    The employee, though innocent, might be arrested and criminally charged.    To summarily suspend on that account a fixed award would obviously deprive him of property without due process of law."

In *Cundiff* v. *Chrysler Corp.*, 293 Mich 404, plaintiff suffered a compensable injury and was awarded compensation for total disability.    It also appears that plaintiff was given lighter work to do and lost some time because of a union seniority rule.    We there said:

"The claim that plaintiff did not sustain any compensable disability is untenable.    Defendant says in its brief that 'plaintiff lost no time whatever from his employment with defendant except such as was made necessary by the rules of seniority.'    The fact that lack of work would nevertheless have kept plaintiff idle during the period of disability does not impair the right to compensation.    It is enough that the department found there was in fact total disability and that he could not do the work he was employed to do at the time of the accident."

In *Parling* v. *Motor Wheel Corp.*, 324 Mich 420, plaintiff suffered a compensable injury and was totally disabled from performing the skilled labor in which he was engaged at the time of the injury. Plaintiff was able to return to other work and earned wages less the sum of $4.60 of what he was paid prior to his injury.    He applied to the commission for an award of $4.60 and the same was granted.    It was admitted that plaintiff's failure to earn his original wage was due to a shortening of the work week.    In affirming the award, we held

that plaintiff's earning capacity subsequent to the injury depended upon his ability to do other work, number of hours per week that such work was available and the hourly rates paid for such work.

In *Sotomayor* v. *Ford Motor Co.,* 300 Mich 107, plaintiff suffered a compensable injury to his right hand in 1929. He continued to work for defendant and in 1933 was awarded compensation for partial disability. In 1934, an agreement was entered into suspending payment of compensation for partial disability. Plaintiff continued to work for defendant at favored employment until June, 1937 when he was removed to a leper colony. In 1940, plaintiff was awarded compensation for partial disability due to his original injury. The award was affirmed by an equally divided court. In the opinion for affirmance the following reasons were given:

"The fact that plaintiff is confined in the leper colony by health authorities and is thereby prevented from working at 'favored employment' does not defeat his right to compensation for his continuing hand injury. The liability to pay compensation for partial disability has been determined by the department of labor and industry and the supervening leprosy and resulting confinement does not relieve defendant from such adjudicated liability."

In the *Ward, Letourneau, Neal, Cundiff* and *Parling Cases* a valid award of compensation had been granted for injuries arising out of and during the course of employment. We there held that subsequent events such as insanity, old age, confinement in jail, unemployment due to seniority rules or shortening of work hours were not sufficient reasons for suspending, decreasing or increasing an award. In the *Sotomayor Case* the award was for partial disability from a nerve injury. We there held that confinement in a leper colony was not a sufficient reason for deny-

ing an award of compensation for partial disability. In the case at bar the award for total disability was granted for injuries received in 2 accidents totally unrelated to plaintiff's employment. The award is contrary to the rule announced in *Levanen* v. *Seneca Copper Corp., supra,* where we said:

"The test of an injured employee's right to compensation is his inability by reason of the accident to work and earn wages in the employment at which he was engaged when injured."

The order from which the defendants have appealed should be vacated, with costs to defendants.

Boyles, C. J., and Carr, J., concurred with Sharpe, J. Butzel, J., did not sit.