ADKINS *v.* RIVES PLATING CORPORATION.

1. WORKMEN'S COMPENSATION—COMPENSATION COMMISSION—SU-
PREME COURT.
    The workmen's compensation commission is the sole trier of facts
        in a proceeding to recover workmen's compensation, the Su-
        preme Court not being permitted to weigh the evidence (CL
        1948, § 413.12).

2. SAME—PURPOSE OF ACT—CONSTRUCTION.
    The workmen's compensation act is to be construed liberally to
        provide indemnity for accidents peculiarly incidental to em-
        ployment but it was not intended to be health, accident and old
        age insurance and spread general protection over risks common
        to all and not arising out of and in the course of employment.

3. SAME—COMPENSATION COMMISSION—INFERENCES.
    The workmen's compensation commission may draw legitimate and
        reasonable inferences from established facts and circumstances
        but may not draw inferences contrary to the established facts
        and the undisputed evidence.

4. SAME—SECOND FRACTURE—DISABILITY—PROXIMATE CAUSE.
    Disability due to second fracture of forearm was not compensable
        under the workmen's compensation act, where such fracture
        occurred as plaintiff fell off his bicycle while not at work for
        defendant employer, since it did not arise out of and in the
        course of his employment and there was no causal connection
        between second fracture and first one which had not completely
        healed.

REFERENCES FOR POINTS IN HEADNOTES

[1] 58 Am Jur, Workmen's Compensation § 532.
[2, 4, 5] 58 Am Jur, Workmen's Compensation §§ 209–212.
[3] 58 Am Jur, Workmen's Compensation § 450.
[4, 5] 58 Am Jur, Workmen's Compensation § 278.
[4, 5] Workmen's compensation as affected by external infection
    from original injury or subsequent accident. 7 ALR 1186; 102
    ALR 790.

5. SAME—SECOND FRACTURE—DISABILITY—UNHEALED FRACTURE.
     Award allowing workmen's compensation for a period of total
        disability, a period of partial disability and medical and hos-
        pital expenses after second fracture of forearm which fracture
        did not arise out of and in the course of employment was error
        insofar as there was allowance for disability and medical
        expenses directly resulting from such injury, although it ap-
        pears that there had not been a complete healing of first frac-
        ture which had been sustained while in defendant's employ.

6. SAME—COSTS.
     No costs are allowed in appeal in proceeding to recover further
        workmen's compensation, where neither party has prevailed.

Appeal from Workmen's Compensation Commission. Submitted September 18, 1953. (Docket No. 81, Calendar No. 45,632.) Decided November 27, 1953.

Joseph Adkins presented his application for further compensation against Rives Plating Corporation, employer, and State Accident Fund, insurer, for injuries alleged to have resulted from his employment. Award to plaintiff. Defendants appeal. Reversed and remanded.

*Raymond H. Rapaport,* for plaintiff.

*Harry F. Briggs* (*Peter Munroe,* of counsel), for defendants.

BUSHNELL, J. Plaintiff, Joseph Adkins, sustained an injury while in the employ of defendant Rives Plating Corporation on December 15, 1950, which resulted in a fracture of the radius bone of his left forearm. He was paid compensation at $28 per week for total disability from the date of the injury to and including May 30, 1951. He returned to work with lighter duties on May 31, 1951, at which time his compensation ceased because of his partial re-

covery. Thereafter payments were made to him of wages at the same rate that he formerly earned.

On Sunday, September 9, 1951, plaintiff was involved in an accident while riding a bicycle. That accident and its results are described by Adkins, in his testimony, as follows:

"Well, I was riding a bicycle up the street and went around a corner, the bike tipped over with me, I hit with my right hand and my left hand came over and hit too, and when my left hand hit it broke. Well, I knew it was broken; I picked the bike up, took it back to the house, my neighbor was there, I told him to take me to the doctor in my car, that I broke my arm, he did and Dr. Parker he sent me to the hospital."

Adkins filed an application for hearing and adjustment of claim on December 24, 1951, in which he stated:

"1. That this claim relates to a personal injury which occurred on or about December 15, 1950, or to a disablement from occupational disease, which occurred on or about    *    *    *
"2. That the injury or disablement occurred at Rives Junction, Jackson, Michigan, and in the following manner: Injured was buffing, got away from him and struck him on the left forearm; Weekly earnings, $90.
"3. Nature of disability—Injured left arm."

Dr. Richard C. Demming and Dr. Earl E. Parker treated Adkins for the original fracture of his left arm, and also attended him after his second injury. Dr. Demming testified in part:

"Q. What did you find?
"A. We opened the radius and at the fracture site I found that actually there had been a little, or no bone union.

"*Q.* You say had been—you mean prior to the second injury?

"*A.* Yes, that the previous fracture had never healed by bony union.

"*Q.* And what else did you find?

"*A.* Oh, that the bone ends were extremely hard, very dense, with an indication that there was a non-union, nonbony union, or a very delayed union.

"*Q.* Then, from your observation, during the surgery, were you able to form an opinion as to whether or not the fracture, original fracture had healed?

"*A.* The original fracture had not healed.  *  *  *

"*Q.* Let me ask you if what you found when you performed the bone reduction, was in your opinion a new fracture, as distinguished from an aggravation of an existing fracture?

"*A.* Well the old fracture was still present and unhealed, and that there was a fracture through the fibrous union at the site of the previous fracture; in other words, a new fracture through an unhealed old fracture.  *  *  *

"*Mr. Rapaport:*  *  *  *  Give us your opinion Doctor, if you have one as to whether or not the original accident, namely the fracture when the man was buffing, might, or could be considered to be the cause of the condition which you reduced in September of 1951?

"*A.* Yes, I feel that the original injury was the cause of the second fracture superimposed on a trauma."

Dr. Parker's testimony was confined to the treatment following the first injury and his examination of Adkins' condition after the second injury. He stated in part:

"In September—on September 9, 1951, Joe was brought to my office with the story that he had fallen from the bicycle and had injured his left arm, and in looking at it it was obvious that it was injured, that it was fractured. I took him into Foote Hos-

pital, had him X-rayed immediately and determined that there was a fracture, that there was an angulation at the site of the old fracture, and I called in Dr. Demming as the orthopedic consultant again and it was Dr. Demming's opinion at that time that we should procrastinate no longer, but Joe should have bone reduction, with application of plate and bone graft. This was done on the 11th of September, and Joe had an uneventful recovery, except for his discomfort; and subsequent X-rays proved that there was good healing. The cast was eventually removed, I believe around the latter part of November or first of December, and Joe has had so far an uneventful recovery."

The deputy commissioner awarded compensation "at the rate of $28 per week for total disability from December 16, 1950 to May 30, 1951 and at the rate of $28 per week for total disability from September 9, 1951 to December 28, 1951."

He further found "that the employee is still partially disabled and entitled to receive compensation at the rate of $28 per week for the week ending January 4, 1952; $16.80 for the week ending January 11, 1952; $11.91 for the week ending January 18, 1952; $28 for the week ending January 25, 1952; payments to stop as of January 25, 1952, because plaintiff returned to work at equal or greater wages. Defendants may have credit for the compensation voluntarily paid."

An amended award was later filed which included medical and hospital expenses. In affirming these awards the commission, on review, said in part:

"There can be no doubt that plaintiff had not fully recovered from the first accident when the second accident occurred. He was not able to do buffing, the heavier work at which he was employed at the time of the original injury, because of the condition of his left arm. His inability to work as a buffer

was a direct result of that injury. It is evident from the medical testimony that the failure to heal of the original fracture was the proximate cause of the second fracture. There is a causal relation between the accident plaintiff sustained December 15, 1950 and the disability commencing September 10, 1951."

Appellant State Accident Fund denies that the plaintiff has suffered any compensable disability since May 30, 1951, or that he is entitled to reimbursement for hospital expenses when he himself did not make such expenditures.

Decision rests primarily upon the implication of the first question, which is stated by the appellee in this manner:

"Where the workmen's compensation commission's finding of fact that there is a causal connection between plaintiff's disability and a compensable accident is supported by competent evidence, should the finding be affirmed by the Supreme Court?"

It is fundamental that the commission is the sole trier of the facts, and that this Court cannot weigh the evidence. See CL 1948, § 413.12 (Stat Ann 1950 Rev § 17.186), which reads in part:

"The findings of fact made by the compensation commission acting within its powers, shall, in the absence of fraud, be conclusive, but the Supreme Court shall have power to review questions of law involved in any final decision or determination of said compensation commission."

We must, therefore, accept the finding of the commission that the failure of the original injury to heal was the proximate cause of the second fracture, unless that finding is the result of an erroneous application of the law.

The original injury may or may not have been a contributing factor in that it rendered plaintiff susceptible to the second injury, but it cannot be said

to be the proximate cause of the disability resulting from the second injury. The proximate cause of the second injury was the riding of a bicycle by Adkins which exposed him to the hazards entailed thereby. He certainly was not engaged in his master's employ on the Sunday in question; nor can we discern any accidental or fortuitous circumstance present upon which a causal relationship between the 2 injuries may be predicated. There was nothing in the nature of Adkins' employment which required him to expose himself to such a hazard, and common sense would have dictated that, in his condition, he refrain from such exposure.

Dr. Demming, on cross-examination, stated that the second fracture could have occurred even though the arm had never before been fractured. The record clearly shows that the first injury did not prevent Adkins from working and, in fact, from earning the same wages that he previously earned.

In *Simpson* v. *Lee & Cady,* 294 Mich 460, 463, the Court said:

"The compensation law is to be construed liberally to provide indemnity for accidents peculiarly incidental to employment, but it was not intended to be health, accident and old age insurance and spread general protection over risks common to all and not arising out of and in the course of employment."

This rule of law has been cited with approval in *Rucker* v. *Michigan Smelting & Refining Co.,* 300 Mich 668. See, also, *Riley* v. *Kohlenberg,* 316 Mich 144, 148; and *Wiltse* v. *Borden's Farm Products Company of Michigan,* 328 Mich 257, 265.

In *Harris* v. *Checker Cab Manufacturing Corporation,* 333 Mich 66, 71, we said:

"The commission may draw legitimate and reasonable inferences from established facts and circumstances. *Froman* v. *Banquet Barbecue, Inc.,* 284

Mich 44, 51; and *Goudie* v. *Lakey Foundry & Machine Co.*, 327 Mich 138, 141. Inferences, however, may not be drawn which are contrary to the established facts and the undisputed evidence. *Putnam* v. *Beechler*, 299 Mich 552, 561."

The commission's finding that the first fracture was the proximate cause of the second fracture is not even supported by the previously quoted testimony of plaintiff himself.

Appellants have cited no authority save *Fields* v. *G. M. Brass & Aluminum Foundry Company*, 332 Mich 113, a case where an award of compensation was affirmed, the original injury having rendered the employee in question susceptible to a subsequent injury which arose out of and in the course of his employment.

Appellee cites in support of the affirmation of the award a number of authorities, chief among which are: *Adams* v. *W. E. Wood Co.*, 203 Mich 673; *Reiss* v. *Northway Motor & Manfg. Co.*, 201 Mich 90; and *Mauch* v. *Bennett & Brown Lumber Co.*, 235 Mich 496.

In the *Adams Case* there was a fracture of the left arm. Later, when advised by the attending physician that he could resume work as a night watchman, Adams immediately started for his place of employment. While on his way he was jostled in a streetcar and suffered a refracture of his arm. He was then carrying out his employer's physician's instructions and was not engaged in any hazardous undertaking of his own.

The *Reiss Case* is somewhat similar in its facts, in that a broken leg was refractured while Reiss was returning from work which he resumed only under the instructions of his employer's doctor. He, also, was not engaged in any hazardous undertaking. The industrial accident board held that, when he re-

turned to work, Reiss was unable to do so and should not then have been ordered to resume work.

In the *Mauch Case* a logger bruised his great toe, which soon thereafter was frozen. The medical testimony was:

"He would not have frozen the toe, in all probability, if he had not received the injury and disturbed the normal circulation."

These 3 cases stand alone and their factual situations are entirely different from those in the instant case, where the second injury could have occurred notwithstanding the prior injury. There were in each of these cases causal connections between the first and the second injuries, and no independent intervening cause interfered to break the chain of causation. In the *Rucker Case, supra,* the employee suffered a leg injury and was sent by the employer for treatment to a doctor's office. While being taken home from the doctor's office he was injured in a collision between his taxicab and another vehicle which resulted in a loss of an eye. We said in that case:

"There is no causal connection between the leg injury received at the plant and the eye injury received in the taxicab collision. The chain of causation was broken and the eye injury came 'from a hazard to which the workman would have been equally exposed apart from the employment.'" Citing *Appleford* v. *Kimmel,* 297 Mich 8, 12. See, also, *Pearce* v. *Michigan Home & Training School,* 231 Mich 536.

The affirmation of the award in the instant case would establish a precedent allowing compensation for subsequent injuries which have not arisen out of and in the course of the employment, which bear no relationship to the scope thereof and are but remotely connected with the original injury.

The award of the commission, being contrary to law, is vacated and the cause is remanded with direction to further amend the order by disallowing compensation for the second injury and any medical expenses directly resulting from that injury. Neither party having prevailed, no costs will be taxed.

DETHMERS, C. J., and ADAMS, BUTZEL, CARR, SHARPE, BOYLES, and REID, JJ., concurred.