SCHAEFER v WILLIAMSTON COMMUNITY SCHOOLS

Docket No. 56860. Submitted April 14, 1982, at Lansing.—Decided June 9, 1982. Leave to appeal applied for.

Plaintiff, Robert W. Schaefer, injured his back while working as a bus driver for defendant Williamston Community Schools. Following a hearing, an administrative law judge denied plaintiff's claim for workers' compensation benefits on the ground that plaintiff aggravated his back injury by moving personal goods during a move of his residence. A divided panel of the Workers' Compensation Appeal Board (the board) reversed the administrative law judge's ruling and awarded plaintiff benefits. Defendants Williamston Community Schools and Michigan Millers Mutual Insurance Company appeal that decision, by leave granted, alleging several errors. *Held:*

1. The Court of Appeals is bound by the board's determination that plaintiff's current disability is related to his primary injury since the board's finding is supported by competent, material and substantial evidence on the record.

2. The board erred in its application of the law to the facts of this case when it determined that since plaintiff's back injury was traceable to his primary injury only intentional and wilful misconduct on the plaintiff's part should bar his recovery.

3. The proper standard is that where the primary compensable injury arises out of and in the course of employment compensability may be extended to a subsequent injury or aggravation of the primary injury where it has been established that the subsequent injury or aggravation is the direct and natural result of the primary injury and the claimant's own conduct has not acted as an independent intervening cause of the subsequent injury or aggravation.

4. As to what type of conduct on the part of the claimant will defeat his right to compensation, the Court finds that the proper standard is to determine whether the claimant's conduct

REFERENCES FOR POINTS IN HEADNOTES
[1] 82 Am Jur 2d, Workmen's Compensation § 534.
[2] 82 Am Jur 2d, Workmen's Compensation §§ 565, 631.
[3] 82 Am Jur 2d, Workmen's Compensation § 240 *et seq.*
[4, 5] 82 Am Jur 2d, Workmen's Compensation § 333.

was negligent in light of his knowledge of his condition. A claimant is not entitled to compensation for a subsequent injury or aggravation of the primary injury where the claimant engaged in an activity, and common sense would have dictated that, in his condition, he refrain from such exposure.

Reversed and remanded.

1. WORKERS' COMPENSATION — BURDEN OF PROOF.

A claimant for workers' compensation benefits must demonstrate his entitlement to such benefits by a preponderance of the evidence.

2. WORKERS' COMPENSATION — FINDINGS OF FACT — CONSTITUTIONAL LAW.

The Court of Appeals, in reviewing decisions by the Workers' Compensation Appeal Board, is charged with reviewing questions of law and deciding if there is competent evidence in the record to support the board's findings of fact; reversal is required where the board decides a case in a legally improper framework, using improper standards (Const 1963, art 6, § 28; MCL 418.861; MSA 17.237[861]).

3. WORKERS' COMPENSATION — COMPENSABLE INJURIES — COURSE OF EMPLOYMENT.

An injury must occur out of and in the course of a worker's employment to be compensable under Michigan's Worker's Disability Compensation Act (MCL 418.301; MSA 17.237[301]).

4. WORKERS' COMPENSATION — SUBSEQUENT INJURIES.

Workers' compensation benefits may be extended to a subsequent injury or aggravation of a primary injury where the primary compensable injury arises out of and in the course of employment and where it is established that the subsequent injury or aggravation is the direct and natural result of the primary injury and the claimant's own conduct has not acted as an independent intervening cause of the subsequent injury or aggravation.

5. WORKERS' COMPENSATION — INDEPENDENT INTERVENING CAUSES — CONDUCT BY CLAIMANT.

The proper standard to be used in determining what type of conduct by a workers' compensation claimant defeats his right to compensation by acting as an independent intervening cause of a subsequent injury or aggravation of a primary injury is whether the claimant's conduct was negligent in light of his knowledge of his condition; a claimant is not entitled to com-

pensation for a subsequent injury or aggravation of the primary injury where the claimant engaged in an activity, and common sense would have dictated that, in his condition, he refrain from such exposure.

*The Cox Law Firm, P.C.,* for plaintiff.

*Anderson, Green & Vincent, P.C.,* for defendants.

Before: DANHOF, C.J., and R. B. BURNS and WAHLS, JJ.

DANHOF, C.J. Defendants appeal by leave granted from a decision of the Workers' Compensation Appeal Board which awarded plaintiff benefits for a disabling back injury.

On February 5, 1976, plaintiff injured his back while working as a bus driver for defendant Williamston Community Schools. He received workers' compensation benefits until he returned to work on March 1, 1976. Plaintiff proceeded to work for the remainder of the 1975-1976 school year. Plaintiff also worked the entire 1976-1977 school year. Plaintiff testified that he suffered constant back pain after the February, 1976, accident and that he stopped making extra bus runs, which involved transporting students to extracurricular activities. Plaintiff passed routine physical examinations in September of 1976 and in August of 1977. He did not complain of any back problems to the examining physician at these examinations. In August of 1977,[1] plaintiff moved his residence. Plaintiff claimed to have lifted only light objects during this move, but admitted that that was "something I shouldn't have done". Following the

[1] There is some confusion as to exactly when plaintiff moved. On appeal, he states that he moved in August. However, the board's opinion states that plaintiff moved in September.

summer recess, plaintiff returned to work on September 3, 1977. On his last day of work, September 5, 1977, plaintiff notified his superiors that he was unable to work because of intense back pain.

Plaintiff was examined by Dr. Donald R. McCorvie, M.D., on September 15, 1977, at which time plaintiff complained about his back. According to Dr. McCorvie, plaintiff told him that he had moved into a new house and "had been carrying some heavy boxes and doing a lot of lifting making this move and he injured his back". Dr. McCorvie stated that x-rays taken after plaintiff's February 1976 accident indicated a severe slippage of the fifth lumbar vertebra on the first sacral segment. Dr. McCorvie was not able to state categorically whether the lifting of the boxes increased the slippage. However, he was of the opinion that the x-rays indicated a very weak spot in plaintiff's back and that plaintiff's back probably could not take the lifting of boxes.

Following a hearing, an administrative law judge denied plaintiff's claim for benefits because plaintiff aggravated his back injury by moving personal goods. A divided panel of the Workers' Compensation Appeal Board (the board) reversed the administrative law judge's ruling. The majority opinion, in pertinent part, stated:

"On the whole, plaintiff's disability is reasonably related to the injury he suffered at work and defendant has not shown plaintiff's moving activities to be intentional and wilful misconduct on his part. Therefore, the administrative law judge's decision must be reversed.

"The record supports that plaintiff's February, 1976, fall caused severe slippage in his vertebrae. After plaintiff's return to work in March, 1976, he reduced his driving responsibilities because of his back pain. Although plaintiff was in pain, he continued driving and did not suffer any loss of wages. (Plaintiff may have, but

he presented no evidence concerning any wage loss occasioned by his not taking extra runs.) Given these facts, plaintiff was partially disabled, but not entitled to any compensation because he had suffered no wage loss. *Medacco v Campbell, Wyant & Cannon Foundry Co,* 48 Mich App 217 [210 NW2d 360] (1973).

"Dr. McCorvie's testimony establishes that it was certainly reasonable to conclude that plaintiff's current back condition was traceable to the February, 1976, injury. Dr. McCorvie testified:

" 'A Well, yes. I mean—well, I mean, he had hurt his back and then on the x-rays even before he had hurt his back you could see this tremendous slippage, *so this has got to be a very weak spot in this man's back* and it certainly is very consistent with the fact that he tried to lift some boxes and that his back couldn't take it.'

"Thus, there is ample evidence showing the relationship between plaintiff's February, 1976, injury and that occurring in September, 1977. By the converse, there was no evidence that plaintiff could have injured his back in September, 1977, without having first injured it in February, 1976." (Emphasis in original.)

## I

Preliminarily, we note that in order to be entitled to workers' compensation benefits a claimant must demonstrate his entitlement by a preponderance of the evidence. *Aquilina v General Motors Corp,* 403 Mich 206, 211; 267 NW2d 923 (1978). In reviewing a decision of the board this Court is charged with reviewing questions of law and deciding whether there is any competent evidence in the record to support the findings of fact made by the board. Const 1963, art 6, § 28, and MCL 418.861; MSA 17.237(861). If the board decided this case in a legally improper framework, using improper standards, we are required to reverse. *Galac v Chrysler Corp,* 63 Mich App 414; 235 NW2d 359 (1975).

## II

On appeal, defendants argue that the board erred in finding a causal nexus between plaintiff's back injury and his employment with defendant Williamston Community Schools. While defendants acknowledge that plaintiff suffered a compensable injury in February of 1976, they assert that his testimony and work history susequent to his return to work in March of 1976 clearly indicate that his current disability was not work-related. We disagree.

As can be seen from the portion of Dr. McCorvie's testimony quoted in the board's majority opinion, plaintiff's back was seriously injured and weakened after his 1976 work-related accident and could not take the lifting of boxes. Thus, there was evidence supporting the board's finding that his current disability is *related* to his primary injury. Since the board's finding of fact is supported by competent, material and substantial evidence on the record, we are bound by that determination. See *Dressler v Grand Rapids Die Casting Corp,* 402 Mich 243; 262 NW2d 629 (1978).

## III

In their second assignment of error defendants argue that the board misapplied the law to the facts of the instant case. We agree.

The controlling question involved in the instant case is whether, or under what circumstances, a claimant, such as plaintiff, is entitled to compensation where the claimant has shown that his primary injury arose out of and in the course of his employment but the subsequent aggravation of

that injury took place outside of the work environment and was due, at least in part, to the claimant's own conduct.

Under Michigan's Worker's Disability Compensation Act, to be compensable an injury must occur "out of and in the course of" a worker's employment. MCL 418.301; MSA 17.237(301). See, also, *McClure v General Motors Corp (On Rehearing)*, 408 Mich 191; 289 NW2d 631 (1980). This requirement has been met in the instant case as there is no dispute that plaintiff injured his back at work in 1976 and we are bound by the board's determination that plaintiff's present disability is related to his 1976 accident. Thus, what we are concerned with in the instant case is not the question of whether plaintiff's injuries arose out of and in the course of his employment but the limits of compensability for an injury which is work-related.

In his treatise, Professor Arthur Larson suggests that, when it is established that the primary injury arises out of or in the course of employment, every natural consequence that flows from that injury likewise arises out of the employment, unless the aggravation of the primary injury is the result of an independent intervening cause attributable to claimant's own conduct. He explains his direct and natural consequence rule as follows:

"A distinction must be observed between causation rules affecting the primary injury * * * and causation rules that determine how far the range of compensable consequences is carried, once the primary injury is causally connected with the employment. As to the primary injury, it has been shown that the 'arising' test is a unique one quite unrelated to common-law concepts of legal cause, and it will be shown later that the

employee's own contributory negligence is ordinarily not an intervening cause preventing initial compensability. *But when the question is whether compensability should be extended to a subsequent injury or aggravation related in some way to the primary injury, the rules that come into play are essentially based upon the concepts of 'direct and natural results,' and of claimant's own conduct as an independent intervening cause.*

"The basic rule is that a subsequent injury, whether an aggravation of the original injury or a new and distinct injury is compensable if it is the direct and natural result of a compensable primary injury." (Emphasis added; footnote omitted.) 1 Larson, Workmen's Compensation Law, § 13.11, p 3-348.

Larson goes on to explain that when a subsequent injury or aggravation of the primary injury arises out of what he describes as a "quasi-course" activity, such as a trip to the doctor's office for treatment of the primary injury, the causation should not be deemed to be broken by mere negligence in the performance of the activity but only by intentional conduct which may be regarded as expressly or impliedly forbidden by the employer. See 1 Larson, *supra,* § 13.11. In the instant case, plaintiff's activity of moving household goods obviously does not fall within Larson's "quasi-course" category. Therefore, we need not consider whether Larson's treatment of that type of activity is consistent with Michigan law.

More pertinent to the instant case is Larson's discussion of subsequent injury or aggravation of a primary injury where the claimant is not engaged in a "quasi-course" activity. Such a situation might arise, for example, where a claimant with an injured hand engages in a boxing match or a claimant with a back injury attempts to carry trash down a flight of steps. Under these facts, Larson suggests that the chain of causation be-

tween the primary injury and the subsequent injury or aggravation may be deemed broken by either intentional or negligent claimant misconduct. See 1 Larson, *supra,* § 13.11. See, for example, *Yarbrough v Polar Ice & Fuel Co,* 118 Ind App 321; 79 NE2d 422 (1948), *Sullivan v B & A Construction, Inc,* 282 App Div 788; 122 NYS2d· 571 (1953), *rev'd* 307 NY 161; 120 NE2d 694 (1954), *Jones v Huey,* 210 Tenn 162; 357 SW2d 47 (1962).

Michigan courts have also adopted the view that a claimant's own activities can be an independent intervening act breaking the chain of causation between the primary injury and any subsequent injury or aggravation thereof.

A case particularly pertinent to this issue is *Adkins v Rives Plating Corp,* 338 Mich 265; 61 NW2d 117 (1953). In that case the claimant suffered a fractured left forearm in a work-related accident. He was paid compensation and was assigned lighter duties when he returned to work while the fracture was healing. Nine months after the original injury the claimant refractured his forearm when he fell from a bike that he was riding on a Sunday afternoon. An expert medical witness testified that at the time of the bicycle accident the original fracture had not healed and that the accident resulted in a new fracture through an unhealed old fracture. The Supreme Court reversed the compensation award. The Court reasoned:

"The original injury may or may not have been a contributing factor in that it rendered plaintiff susceptible to the second injury, but it cannot be said to be the proximate cause of the disability resulting from the second injury. The proximate cause of the second injury was the riding of a bicycle by Adkins which exposed him to the hazards entailed thereby. He certainly was

not engaged in his master's employ on the Sunday in question; nor can we discern any accidental or fortuitous circumstance present upon which a causal relationship between the 2 injuries may be predicated. There was nothing in the nature of Adkins' employment which required him to expose himself to such a hazard, and common sense would have dictated that, in his condition, he refrain from such exposure.

\* \* \*

" 'The compensation law is to be construed liberally to provide indemnity for accidents peculiarly incidental to employment, but it was not intended to be health, accident and old age insurance and spread general protection over risks common to all and not arising out of and in the course of employment.' " *Adkins,* 270-271.

We do not read *Adkins* as standing for the principle that because the claimant's second injury occurred on a Sunday and not at work, that, in and of itself, is enough to conclude that the claimant is not entitled to compensation. Rather, we view *Adkins* as standing for the principle, consistent with Larson's view, that to be entitled to compensation under the facts of that case the claimant had to prove that his subsequent injuries were the direct and natural result of his primary injury *and* that his own conduct did not act as an independent intervening cause which defeated the causal nexus between the primary and subsequent injuries. The *Adkins* Court concluded that the claimant did not establish the requisite relationship between the primary and subsequent injuries.

In a somewhat different context the Supreme Court in *Lynch v Briggs Manufacturing Co,* 329 Mich 168; 45 NW2d 20 (1950), addressed circumstances where a supervening event not attributable to the claimant will not cut off his right to compensation. The claimant in *Lynch* sustained a compensable knee injury in March of 1945. He was

hospitalized for three months and, eventually, in September of 1946, returned to work still suffering from his knee disability. After his return, the claimant was assigned favored work at his skilled rate of pay. On May 27, 1947, the claimant and another worker were standing in a safety zone—near their employer's plant—when an automobile came directly at them. The other man jumped out of the way but when Lynch attempted to jump his previously injured knee slipped out of place and he was struck by the automobile. After the May 27, 1947, accident, Lynch was not able to perform his favored work. In finding that Lynch was entitled to compensation the Court reasoned:

"Lynch at the time of hearing was not physically capable of performing the favored work. He was prevented from doing so by events not under his control. Yet he was still totally disabled in his skilled employment because of his occupational injury of 1946. Supervening events, stopping his favored work and not attributable to him, will not defeat his compensation as a skilled employee. *Ward v Heath Brothers,* 212 Mich 180 [180 NW 245 (1920)]; *Letourneau v Davidson,* 218 Mich 334 [188 NW 462 (1922)]; *Neal v Stuart Foundry Co,* 250 Mich 46 [229 NW 595 (1930)]; *Cundiff v Chrysler Corp,* 293 Mich 404 [292 NW 348 (1940)]; and *Parling v Motor Wheel Corp* [324 Mich 420; 37 NW2d 159 (1949)]." *Lynch,* 168, 172.

In the instant case the majority opinion of the board apparently recognized the applicability of the principles set out in *Adkins* and *Lynch* to the facts of the instant case but then proceeded to conclude that the board was no longer bound by *Adkins.* Rather, the board reasoned that plaintiff's back injury was traceable to his February, 1976, injury and therefore "only intentional and wilful

misconduct [on plaintiff's part] should bar plaintiff's recovery herein". This was reversible error.

In light of our discussion of Larson and our interpretation of *Adkins,* in our view, where the primary compensable injury arises out of and in the course of employment compensability may be extended to a subsequent injury or aggravation of the primary injury where it has been established that the subsequent injury or aggravation is the direct and natural result of the primary injury and the claimant's own conduct has not acted as an independent intervening cause of the subsequent injury or aggravation. As to what type of conduct on the part of the claimant will defeat his right to compensation, we find that the proper standard is to determine whether the claimant's conduct was negligent in light of his knowledge of his condition. Or, as stated in *Adkins,* a claimant is not entitled to compensation for a subsequent injury or aggravation of the primary injury where the claimant engaged in an activity "and common sense would have dictated that, in his condition, he refrain from such exposure". *Adkins,* 271.

In the instant case the board applied an incorrect legal standard to the facts of the instant case. Therefore, we remand to the board for a determination of whether plaintiff's activity in moving household goods was negligent in light of his knowledge of his condition. If the board so finds, defendant is not entitled to compensation.

Reversed and remanded. We do not retain jurisdiction. No costs.