689 N.W.2d 142 (2004)
Jeannette GORDON, Plaintiff-Appellant,
v.
HENRY FORD HEALTH SYSTEM, Defendant-Appellee.
Docket No. 125335, COA No. 244596.
Supreme Court of Michigan.
December 2, 2004.

ORDER
On October 6, 2004, the Court heard oral argument on the application for leave to appeal the November 18, 2003 judgment of the Court of Appeals. On order of the Court, the application for leave to appeal is again considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.
MARILYN J. KELLY, J. (dissenting).
I write separately to express my agreement with the opinion[1] of Judge WHITE of the Court of Appeals. I agree that defendant is entitled to a reduction of its obligation to pay worker's compensation benefits to plaintiff. To ascertain the amount of the reduction, I would remand for a determination of the fair market value of plaintiff's work for her company. Defendant is entitled to reduce its obligation to pay benefits only to the extent of plaintiff's "wage-earning capacity."

Background
At one time, plaintiff was employed by defendant as a registered nurse. In 1992, defendant began paying plaintiff permanent disability benefits pursuant to the Worker's Disability Compensation Act (WDCA). M.C.L. § 418.101 et seq.
While on disability leave, plaintiff founded two adult foster care group homes. *143 She used her nursing experience to establish the homes and obtain the necessary operating licenses. According to plaintiff, the licenses require her to participate actively in the operation of the homes. Thus, plaintiff frequently visits the homes to monitor staff and address residents' complaints. She makes some hiring decisions and exercises some control over the employees. On occasion, plaintiff transports patients and delivers supplies and food to the homes.
Naturally, plaintiff receives profits each year from these homes as their owner. She has reported the profits on her annual tax returns as income. Plaintiff also owns and receives income from several rental properties. In 1998, defendant sought to stop payments and recoup previous payments after learning that plaintiff had these sources of income. The worker's compensation magistrate denied the application. He ruled that plaintiff's income was from investments rather than from wages that defendant is entitled to deduct from its benefit obligations under the WDCA.
The Worker's Compensation Appellate Commission (WCAC) sitting en banc reversed the ruling. Because plaintiff actively managed the foster care homes, it found that the income she received from them was "real, palpable, and substantial consideration." Citing Hoste v. Shanty Creek Mgt., Inc., 459 Mich. 561, 576, 592 N.W.2d 360 (1999). Thus, under M.C.L. § 418.371(1), defendant was entitled to reduce plaintiff's worker's compensation benefits by the full amount of this income.
We remanded the case to the Court of Appeals. It affirmed the WCAC decision in an unpublished split opinion. (Docket No. 244596, issued November 18, 2003). Plaintiff again sought leave to appeal. We directed oral argument on the application to grant leave. In addition to the issues raised, we asked the parties to discuss whether the amount of plaintiff's wages or wage-earning capacity, if any, should be (1) equal to the net profit of the business, or (2) based on the fair market value of the services performed by plaintiff. Gordon v. Henry Ford Health Sys., 470 Mich. 892, 683 N.W.2d 144 (2004), amended 470 Mich. 892, 683 N.W.2d 144 (2004).
Following oral argument, the Court voted to deny leave to appeal.

Standard of Review
This case involves an issue of statutory construction. We review such issues de novo. Cardinal Mooney High School v. Michigan High School Athletic Ass'n, 437 Mich. 75, 80, 467 N.W.2d 21 (1991). The primary goal of statutory construction is to further the Legislature's intent. Reardon v. Dep't of Mental Health, 430 Mich. 398, 407, 424 N.W.2d 248 (1988).

Analysis
It is undisputed that plaintiff remains disabled as defined in the WDCA. Her on-the-job injury continues to preclude her return to any work as a registered nurse, which is the work suitable to her qualifications and training. M.C.L. § 418.301(4). However, plaintiff's disability does not create a presumption of wage loss under existing law. Id.
As the Court of Appeals recognized, the purpose underlying the WDCA is to provide income to injured workers. When they have income from gainful work, their benefits should be reduced by the amount of the income. Thus, an employer is not liable to compensate an employee whose "average weekly earnings" have not been diminished according to M.C.L. § 418.371(1). M.C.L. § 418.361(1).
The compensation payable, when added to the employee's wage earning capacity after the personal injury in the same or other employments, shall not exceed the employee's average weekly earnings at the time of the injury. [M.C.L. § 418.371(1).]
*144 An "employer is permitted to deduct ... from compensation payable the employee's wages or wage-earning capacity after the injury." Powell v. Casco Nelmor Corp., 406 Mich. 332, 348, 279 N.W.2d 769 (1979), citing Lynch v. Briggs Mfg. Co., 329 Mich. 168, 172, 45 N.W.2d 20 (1950). "Wage-earning capacity" is the reasonable ability to earn wages in work suitable to one's qualifications and training. Sington v. Chrysler Corp., 467 Mich. 144, 155, 648 N.W.2d 624 (2002). It usually corresponds to wages actually earned. See Powell at 347-348, 279 N.W.2d 769; Sington at 181, 648 N.W.2d 624 (Kelly, J., dissenting).
The issue here is the extent to which plaintiff's activities involving her nursing homes demonstrate a wage-earning capacity, making her income from them wages under the WDCA. Plaintiff is designated as the licensee on behalf of the corporation that owns the homes. She testified that she occasionally transports residents of the homes. She obtains and delivers food for the residents and office supplies. She discusses the residents' satisfaction with the care provided and brings deficiencies to the attention of the staff and manager. She makes hiring decisions and establishes wage rates for the employees.
However, plaintiff is not an employee of the corporation, which has several full-time employees, including an office manager who operates the homes and two drivers. Plaintiff is not obligated to perform any particular task with regularity.
The corporation's employees receive bi-weekly paychecks. By contrast, plaintiff receives her income from the corporation annually. She reports this money on her annual tax returns as net profit from the corporation due as its owner, reimbursement of expenses paid on behalf of the corporation, or reimbursement of her initial equity investment in the corporation.[2]
When plaintiff's income from her closely held corporation is analyzed under M.C.L. § 418.371(1), some of it may be "wages" that the corporation would otherwise have to pay an employee. Some of it may be consideration in exchange for work on the corporation's behalf. However, it is also clear that at least some of the income is a return on plaintiff's investment or the reimbursement of monies expended.
On the basis of this information, the magistrate concluded that plaintiff's "services ... were rendered to protect her ownership investment." However, the WCAC concluded that "the correct rule is that an employer may receive credit for the net earnings of an individual ... without regard to whether those earnings are ... wages or profits." It offered no explanation for the conclusion. The Court of Appeals ratified this departure simply because, it said, plaintiff failed to demonstrate that it "is clearly incorrect."
I would correct these misstatements of law. I would hold that defendant is entitled to deduct only that portion of plaintiff's income from the homes that can be considered wages under the WDCA. Plaintiff has acted as a part-time operator of licensed adult foster care group homes. She may have demonstrated a limited "wage-earning capacity." If so, defendant is entitled to deduct the wages plaintiff earned from the wage-loss benefits it owes her. It is not entitled to deduct the return that plaintiff has been paid on her investment in the homes.

Conclusion
I would affirm the Court of Appeals decision that defendant is entitled to reduce some of the wage-loss benefits it pays to plaintiff. However, I would hold that the Court erred in reducing plaintiff's benefits by the total income she received from *145 her closely held corporation. Only that which was payment for services rendered should be used to reduce her benefits. I would hold that defendant is entitled to reduce plaintiff's worker's compensation wage-loss benefits by no more than the fair market value of the work plaintiff has performed. I would remand the case to the worker's compensation magistrate to determine the fair market value of the services plaintiff has rendered to her corporation.
MICHAEL F. CAVANAGH, J., concurs in the statement by MARILYN J. KELLY, J.
NOTES
[1] Concurring in part and dissenting in part.
[2] For example, plaintiff testified that she provided the corporation with its first home and more than $50,000 in start-up funds, and she paid licensing fees of more than $100,000.