In the Matter of the Compensation of
Michael Grable, Claimant.

GRABLE,
*Petitioner,*

*v.*

WEYERHAEUSER COMPANY,
*Respondent.*

(CA 16671, SC 27174)

639 P2d 677

Thomas A. Huntsberger, Springfield, argued the cause for petitioner. With him on the brief was Ackerman & DeWenter, Springfield.

J. W. McCracken, Jr., Eugene, argued the cause and filed the brief for respondent.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

This workers' compensation case is before us on remand from the Supreme Court. The issue is compensability.

### FACTS AND PROCEDURAL HISTORY

Claimant had originally suffered a compensable injury to his back on February 21, 1978, while lifting heavy blocks of wood. He subsequently returned to work on April 3, 1978, and was released for full duty on May 8, 1978. He continued regular employment until October 28, 1978, when he again injured his back while lifting a steel pipe onto his home's roof. It is agreed that this latter event was not connected with work.

Claimant sought to have his February, 1978, claim reopened; his employer refused. After a hearing, the referee, utilizing the "last injurious exposure" rule of *Smith v. Ed's Pancake House,* 27 Or App 361, 556 P2d 158 (1976), concluded that the claimant was not entitled to reopen. The Workers' Compensation Board affirmed the referee. On appeal, this court affirmed without opinion. *Grable v. Weyerhaeuser Company,* 47 Or App 1, 614 P2d 635 (1980). The Supreme Court granted review and reversed and remanded the case to this court. *Grable v. Weyerhaeuser Company,* 291 Or 387, 631 P2d 768 (1981).

### SUPREME COURT ANALYSIS

The Supreme Court's concern with this case lay in the referee's (and, by implication, the Board's and this court's) use of *Smith v. Ed's Pancake House, supra,* in analyzing the facts. *Smith* was a case involving successive injuries where both were work-related, and the issue was which of two insurance carriers would be responsible for the claimant's condition; by contrast, the present case is one in which only the first of the two injurious events was work-connected. The Supreme Court held that *Smith* was inapplicable. *Grable v. Weyerhaeuser Company, supra,* 291 Or 401-402.

The Supreme Court in *Grable* reviewed a number of cases decided by this court in which, unlike *Smith,* the second injury was off the job. The court found from these cases that we have stated the rule applicable to such

circumstances in two different ways. The first, found in *Lemons v. Compensation Department,* 2 Or App 128, 467 P2d 128 (1970), and *Standley v. SAIF,* 8 Or App 429, 495 P2d 283 (1972), the court summarized as follows:

> "The rule to be drawn from *Lemons* and *Standley* is that where a worker suffers an on-the-job injury and thereafter the condition resulting from that injury is worsened by an off-the-job injury, the compensation insurance carrier will be required to afford workers' compensation benefits for the worsened condition *if the worker shows that the on-the-job injury is a material contributing cause of the worsened condition."* *Grable v. Weyerhaeuser Company, supra,* 291 Or at 393. (Emphasis supplied.)

The second way was found by the court in our opinion in *Christenson v. SAIF,* 27 Or App 595, 599, 557 P2d 48 (1976), where we said:

> " '*The rule generally applied in this kind of case is that once the work-connected character of an injury has been established, the subsequent progression of that condition remains compensable so long as the worsening is not shown to have been produced by an independent non-industrial cause.* The issue in cases involving the range of compensable consequences flowing from a primary injury is nearly exclusively the medical issue of casual connection between the primary injury and the subsequent medical complications. 1 Larson, Workmen's Compensation Law 3-279, § 13.11 (1972).' " *Grable v. Weyerhaeuser Company, supra,* 291 Or at 397. (Emphasis supplied.)

The Supreme Court, after reviewing these two different formulations of the appropriate analytical approach, concluded that either was acceptable as a statement of the applicable law:

> "We believe that the compensability of a worsened condition following an off-the-job injury may be determined equally as well under the rule stated and applied in *Lemons* and *Standley* as that stated by Professor Larson and paraphrased in *Christensen.* We conclude that if the claimant establishes that the compensable injury is a 'material contributing cause' of his worsened condition, he has thereby necessarily established that the worsened condition is not the result of an 'independent intervening' non-industrial cause. We hold that an employer is required to pay workers' compensation benefits for worsening of a worker's condition where the worsening is the result of

both a compensable on-the-job back injury and a subsequent off-the-job injury to the same part of the body if the worker establishes that the on-the-job injury is a material contributing cause of the worsened condition." *Grable v. Weyerhaeuser Company, supra,* 291 Or at 400-401.

## ANALYSIS ON REVIEW[1]

As noted, claimant first injured his low back on February 22, 1978, while lifting oversize blocks from a chip conveyor. He saw Dr. Thomas, who diagnosed a severe sprain to the supporting structures of the thoracic spine and sacroiliac joint. Thomas released claimant for light work on April 3, 1978, and for full time work at his regular job on May 8, 1978. Thomas believed claimant had a very small, "less than 5.," permanent impairment.

After the pipe lifting incident, claimant saw a different doctor, Dr. Woodworth on October 20, 1978. Claimant was in acute distress from the lower back injury— bending over, flexed at the hips, was his only comfortable position. Dr. Scofield first saw claimant on November 9, 1978. His pain was still severe. After a number of examinations, she concluded that claimant had "permanent lumbosacral with weight bearing disability." Her diagnosis was "[a l]ongstanding chronic injury to [an] inherently weak and defective L-5 S-1 motor unit." Dr. Scofield referred claimant to Dr. Fechtel, who generally concurred in the earlier diagnosis: "This patient is suffering from residuals from multiple lumbo-sacral sprains imposed upon a structurally deficient spine."

On June 28, 1979, in response to a specific question from claimant's counsel, Dr. Scofield wrote:

"* * * As you know, I did not care for [claimant] during his February, 1978 injury and recuperation period. I have reviewed Dr. Thomas' reports. Since no x-rays were taken, he was unaware of the genetic structural defect to that area. The sharp pain experienced from lifting a heavy chip block * * * is in my opinion most likely due to a L5 S1 disc protrusion. His congenital condition predisposes him to

---

[1] The Supreme Court, in remanding, left to this court a determination of whether to remand this case to the Board or, exercising our *de novo* review function, to decide the case ourselves. We find the record adequate for review and see no reason to remand to the Board to take further evidence.

this type of injury and the February injury was a contributing factor to the second injury in October. The location and severity of the pain were identical. The February injury is based upon a congenital weakness predisposing the area to a disc type of injury. The suggested protrusion is related to subsequent injury as a protrusion can linger on for some time.

"* * * * *

"* * * The February injury did cause impairment that the October injury built upon, but I cannot rate disability for each separate injury. * * *"

Dr. Scofield further explained,

"* * * [Claimant] has had in his spine since his teenage years a deficiency in the normal bio-mechanical integrity of the spine, predisposing him to injury. * * *

"The injury in February further damaged the area and set up conditions that made it possible to be injured as in what happened in October. * * * The question as to whether the October injury was a reinjury to his low back from the February incident is positive in my mind. The same area, same type of pain, and doing a similar type of maneuver all substantiate my opinion.

"Had he not been injured in February, it would have taken more stress to injure his spine in October. * * *"

Claimant was also examined by Dr. Smith, who concluded that the October injury was an "exacerbation" of the February incident. His report implied that claimant may never have been fully medically stationary before the second incident. In response to direct questions, both Scofield and Smith also opined that the February incident was a "material contributing factor" to his second injury.

The medical evidence just outlined is unrebutted. It establishes, under our opinions in *Lemons, Standley* and *Christensen,* as those opinions have been harmonized in *Grable v. Weyerhaeuser Company,* that this claim is compensable.

Reversed and remanded with instructions to accept the claimant's claim for aggravation.