328 S.E.2d 485

Richard L. WILSON

v.

WORKERS' COMPENSATION COM-
MISSIONER and Bethlehem
Mines Corp.

Karen L. COOK

v.

WORKERS' COMPENSATION COM-
MISSIONER and Bethlehem
Mines Corp.

Grant JEFFREY

v.

WORKERS' COMPENSATION
COMMISSIONER and
Buffalo Mining Co.

Nos. 15990, 16005 and 15993.

Supreme Court of Appeals of
West Virginia.

March 29, 1984.

Timothy G. Leach, Charleston, for appellants in Nos. 15990, 16005 and 15993.

John L. McClaugherty and Thomas J. Hurney, Jr., Jackson, Kelly, Holt and O'Farrell, Charleston, for appellees in Nos. 15990 and 16005.

George L. Partain, Valentine, Wilson & Partain, Logan, for appellee in No. 15993.

MILLER, Justice:

We have consolidated these three workers' compensation appeals as they contain a similar legal issue. Each of these appeals involves questions surrounding the termination of additional temporary total disability benefits. Each claimant filed an application for modification to obtain additional temporary total disability benefits. The Commissioner awarded the additional temporary total disability benefits. The employers objected to the awards and, after hearings, the temporary total disability benefits were deemed to have been improperly awarded and repayment of the benefits was ordered under W.Va.Code, 23–4–1c.

The claimants contend that the Commissioner is barred from collecting overpayments of temporary total disability benefits by virtue of *Mitchell v. State Workmen's Compensation Commissioner*, 163 W.Va. 107, 256 S.E.2d 1 (1979), because the employer did not protest the initial compensability of the claim within thirty days of its original filing. We disagree and conclude that a reopening should be treated as a new step in the proceeding where resumption of temporary total disability benefits is sought.

■ It is clear that under W.Va.Code, 23–5–1a (1939), an injured claimant is entitled to petition the Commissioner to make further adjustments of his claim.[1] The evidentiary standard for obtaining a reopening is set out in W.Va.Code, 23–5–1b, which we summarized in the single Syllabus of *Harper v. State Workmen's Compensation Commissioner*, 160 W.Va. 364, 234 S.E.2d 779 (1977):

"For purposes of obtaining a reopening of a Workmen's Compensation claim under the provisions of W.Va.Code, 23–5–1a and –1b, the claimant must show a prima facie cause, which means nothing more than any evidence which would tend to justify, but not to compel, the inference that there has been a progression or aggravation of the former injury."

The issue of whether there is a progression or aggravation of a claimant's original injury turns upon facts which arise after the initial compensable injury. The inquiry is whether these new facts give rise to a condition that can be connected to the original injury.

In *Harper*, the question was whether a subsequent psychiatric disability was related to the claimant's original compensable injury. There is a plethora of cases dealing with the question of what subsequent conditions can be treated as progressions or aggravations of the original injury. *See* A. Larson, 1 Larson's Workmen's Compensation Law § 13.10, *et seq.* (1982).

■ We stated in *Mitchell* that the repayment of temporary total disability benefits provisions of W.Va.Code, 23–4–1c, were not applicable unless there has been an initial protest to the original award of temporary total disability benefits. The reason for this rule is that W.Va.Code, 23–4–1c, provides for repayment only if the claimant is found to be not lawfully entitled to the benefits. We pointed out in Syllabus Point 4 of *Mitchell*[2] that a claimant is not lawful-

---

1. W.Va.Code, 23–5–1a (1939), provides:

"In any case where an injured employee makes application in writing for a further adjustment of his claim under the provisions of section sixteen [§ 23–4–16], article four of this chapter, and such application discloses cause for a further adjustment thereof, the commissioner shall, after due notice to the employer, make such modifications or changes with respect to former findings or orders in such claim as may be justified, and any party dissatisfied with any such modification or change so made by the commissioner shall, upon proper and timely objection, be entitled to a hearing, as provided in section one [§ 23–5–1] of this article."
W.Va.Code, 23–4–16, provides the time limits for seeking modification of benefits.

2. Syllabus Point 4 of *Mitchell*, states:

"The overpayment provisions of W.Va.Code, 23–4–1c, apply only where the Commissioner

ly entitled to temporary total disability benefits when his claim does not jurisdictionally qualify—such as when the injury did not arise out of and in the course of employment.[3]

■ The important point is that *Mitchell's* requirement for a timely protest to the original temporary total disability award in order to obtain the benefits of W.Va.Code, 23–4–1c, is predicated on the fact that the employer will ordinarily know if the initial claim is jurisdictionally defective. On an initial injury the chief inquiry is whether the injury happened in the course of and arising out of the employment. Since the facts surrounding the injury are fairly concise and involve the employer's workplace, he is assumed to have knowledge of them or at least a readily available means of acquiring such knowledge.

For this reason, we held in *Mitchell* that if the employer wished to defeat the jurisdictional basis, he had to file a timely protest under W.Va.Code, 23–5–1. If he did not desire to defeat the claim jurisdictionally but only contest continued payment of temporary total disability benefits, he could then file a petition to modify under W.Va. Code, 23–5–1c.

■ However, where a claimant's temporary total disability payments have been terminated and he desires to have them reinstated, such reinstatement must be based upon new facts showing an aggravation or progression of the injury or other facts not theretofore considered. W.Va. Code, 23–5–1a and –1b; Syllabus Point 2, *Buckalew v. State Compensation Director*, 149 W.Va. 239, 140 S.E.2d 453 (1965). Obviously, such new facts are not something that the employer could have

anticipated when the original claim was filed. It is this inability to anticipate the circumstances upon which a claimant may base his application to reopen that forecloses the application of *Mitchell* to reopening petitions under W.Va.Code, 23–5–1a.

■ Consequently, we conclude that an employer's initial decision not to contest the original jurisdictional basis of an award of temporary total disability does not preclude the employer from contesting a subsequent application to reopen for temporary total disability benefits under W.Va. Code, 23–5–1a, on the ground that the aggravation or progression is not related to the original injury.[4]

With these principles in mind, we turn to the individual cases.

## I.

### THE CLAIM OF RICHARD L. WILSON

On January 24, 1977, the claimant sustained a low back injury while shoveling coal in the course of and as a result of his employment with Bethlehem Mines Corporation. The claimant filed a claim for workers' compensation benefits, and the claim was ruled compensable on February 23, 1977. The employer did not protest the compensability ruling, and the benefits were paid. The claimant subsequently returned to work on March 9, 1977, and worked approximately twenty-one months.

On January 2, 1979, Dr. C.Y. Amores wrote the Commissioner and stated that the claimant had been in his office on December 29, 1978, complaining of low back pain. Dr. Amores said the claimant had stated that he had suffered pain off and on since his January 24, 1977 injury and that

---

determines in a W.Va.Code, 23–5–1, proceeding, that the claimant was not lawfully entitled to the temporary total disability benefits originally by virtue of the fact that the claim did not jurisdictionally qualify."

3. In note 11 of *Mitchell*, 163 W.Va. at 123, 256 S.E.2d at 12, we gave other examples of jurisdictional prerequisites: "Some other jurisdictional prerequisites are the timeliness of the filing under W.Va.Code, 23–4–15, or reapplication under W.Va.Code, 23–4–16, or whether the injury was 'self-inflicted' or caused by 'willful misconduct,

willful disobedience to such rules and regulations ...' under W.Va.Code, 23–4–2."

4. We exclude from today's ruling those situations where the claimant is discontinued from temporary total disability benefits because of a hiatus in his doctor's filing of medical forms, WC219, and subsequently furnishes medical information to show that his temporary total disability still continues. *See Honaker v. State Worker's Compensation Commissioner,* 171 W.Va. 355, 298 S.E.2d 893 (1982).

on December 25, 1978, after playing with his child on the floor, he could hardly get up because of low back pain.

On January 15, 1979, Dr. Amores again wrote the Commissioner and stated that the claimant had objective signs of a back injury and recommended that the claimant be admitted to the hospital for a myelogram and for treatment. After receiving Dr. Amores' letter, the Commissioner authorized Dr. Amores to undertake conservative treatment of the claimant and reinstated the payment of temporary total disability benefits.

The employer protested the payment of all temporary total disability benefits and medical benefits after December 22, 1978. The claimant, however, continued to receive temporary total disability benefits until he returned to work on March 19, 1979.

Protest hearings were held, and the claimant testified that after he returned to work from his injury of January 24, 1977, he worked continuously until December 22, 1978. He stated that on the last day he worked, December 22, 1978, he reinjured his back while he was working on a machine in the course of his employment. He stated that he did not report the injury to anyone at that time. He also testified that three days later, December 25, 1978, after playing with his child, he was unable to get up from the floor of his home. He subsequently went to Dr. Amores and as a result of his visit, temporary total disability benefits were reinstated.

Dr. Amores testified that when he first examined the claimant on December 29, 1978, the claimant told him he had originally injured his back while shoveling coal at work on January 24, 1977, and that he subsequently injured his back on December 25, 1978, while playing with his child. The doctor was of the view that his second back episode was an aggravation of the first.

The employer introduced testimony of its safety inspector who stated that the claimant had failed to report the alleged December 22, 1978 accident immediately and that witnesses, who according to the claimant knew about the accident, actually knew nothing about it. At the conclusion of the protest hearings, the Commissioner concluded that the claimant's evidence did not warrant reopening. The Appeal Board affirmed the Commissioner's decision.

The employer argues that the evidence demonstrates that the claimant suffered no work-related back injury after the initial injury of January 24, 1977. This is not necessarily dispositive of the issue. There is considerable authority elsewhere that recognizes that a claimant may recover for an aggravation of an industrial injury even though the aggravation does not involve the workplace. In the following cases, courts have recognized that a claimant with an original occupationally created back injury can recover where it has been aggravated by some routine occurrence at home. See *Carter v. Rockwood Ins. Co.,* 341 So.2d 595 (La.App.1977); *Richardson v. Robbins Lumber, Inc.,* 379 A.2d 380 (Me.1977); *Schaefer v. Williamston Community Schools,* 117 Mich.App. 26, 323 N.W.2d 577 (1982); *Medart Division of Jackes-Evans Mfg. Co. v. Adams,* 344 So.2d 141 (Miss. 1971); *Grable v. Weyerhauser Co.,* 55 Or. App. 627, 639 P.2d 677 (1981); *Christensen v. State Accident Ins. Fund,* 27 Or.App. 595, 557 P.2d 48 (1976); *Perchelli v. Utah State Industrial Commission,* 25 Utah 2d 58, 475 P.2d 835 (1970); A. Larson, 1 Larson's Workmen's Compensation Law § 13.00, *et seq.* (1982).

We recognized this general principle in *Workman v. Workmen's Compensation Commissioner,* 160 W.Va. 656, 663, 236 S.E.2d 236, 240 (1977), where we said:

"A pertinent principle of law is summarized in I Larson's Workmen's Compensation Law, § 13.00 (1972), as follows:

" ' § 13.00 When the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct.' "

Larson attempts to set several categories under the foregoing general rule, beginning with the most simple situation: where

the original medical condition degenerates into complications which aggravate or render the original condition more severe.[5] He discusses another category: where the original condition is aggravated by the claimant performing some routine task. He distinguishes this category from those situations where "the triggering activity is itself rash in the light of the claimant's knowledge of his condition." A. Larson, 1 Larson's Workmen's Compensation Law § 13.11 at 3–353 (1982).

■ Thus, we believe that as a general rule, if a worker's compensation claimant shows that he received an initial injury which arose out of and in the course of his employment, then every normal consequence that flows from the injury likewise arises out of the employment. If, however, a subsequent aggravation of the initial injury arises from an independent intervening cause not attributable to the claimant's customary activity in light of his condition, then such aggravation is not compensable.

■ Thus, the fact that the claimant is injured and then returns to work does not mean that he is foreclosed from demonstrating that the original injury became aggravated by some routine event which triggered its recurrence. Such routine event is ordinarily one where the claimant is doing an activity that would be customary in light of his condition.

In *Schaefer v. Williamston Community Schools*, 117 Mich.App. 26, 323 N.W.2d 577 (1982), the claimant, after injuring his back in February of 1976, returned to work in March of that year. In August of 1977, while moving some boxes at home, his back injury recurred. There was evidence that he had continued to have episodes of back pain after he returned to work. The reopening was permitted.

*Grable v. Weyerhaeuser*, 55 Or.App. 627, 639 P.2d 677 (1981), involved a February, 1978 back injury with a return to work on April 3, 1978. Subsequently, the claimant while lifting a pipe at his house reinjured his back. Again, the reopening was held to be proper.

■ In the present case, the claimant testified that upon his return to work he continued to experience episodes of back pain, particularly after lifting objects. He indicated that he had used some of his sick days for his back problem. Finally, Dr. Amores testified that the first injury had caused the major problem and that the second injury was an aggravation of the first. We believe that under the foregoing law, the claimant was entitled to the reopening.

## II.

### THE CLAIM OF KAREN L. COOK

■ On August 29, 1979, the claimant was struck on the right side of her neck by a steel bar in the course of and as a result of her employment with Bethlehem Mines Corporation. The claimant filed a claim for workers' compensation benefits for the injury. The claim was ruled compensable, and temporary total disability benefits were paid. The employer did not protest the compensability ruling. Subsequently, the claimant's treating physician, Dr. Uy, released her to return to work on September 17, 1979. Temporary total disability benefits were terminated effective that date.

On November 9, 1979, the claimant was involved in an automobile accident. She injured her right shoulder, chest, neck, and head and was treated by Dr. Prakash Bangani. On December 4, 1979, she was admitted to the Charleston Area Medical Center for surgical repair of a shoulder separation which had occurred during the automobile accident. She was discharged from the hospital on December 23, 1979.

The claimant submitted her hospital and medical bills for the December, 1979 hospitalization as a part of her application to reopen her original workers' compensation claim. On December 28, 1979, the Commissioner entered an order reinstating the claimant's temporary total disability benefits from November 16, 1979, until December 25, 1979. The employer timely protest-

5. A. Larson, 1 Larson's Workmen's Compensa- tion Law § 13.11 at 3–348 through 3–349 (1982).

ed the December 28, 1979 award on the basis that her disability was not a result of the original industrial accident. In support of its position, the employer filed the hospital records relating to her treatment after the claimant's automobile accident.

The Commissioner referred the claimant to Dr. C.A. Stevenson for evaluation. After examining the claimant, Dr. Stevenson reported, on February 20, 1980, that the examination, insofar as the claimant's neck was concerned, was negative except for complaints of pain upon rotation of the neck, which he attributed to the automobile accident.

On July 18, 1980, Dr. Randolph L. Anderson, who had superceded Dr. Uy as the claimant's treating physician, reported that the claimant was released to return to work. The claimant, however, underwent further surgery on her shoulder, and she was released to return to work until December 15, 1980.

At a hearing on February 1, 1982, Dr. Anderson testified that he first saw the claimant on February 25, 1980, and on that date that she had only slight limitation of motion in the cervical spine. He indicated his agreement with Dr. Stevenson's statement that had it not been for the intervening automobile accident and shoulder injury, the claimant could have returned to work much earlier.

At the conclusion of the protest hearings, the Commissioner entered an order setting aside temporary total disability benefits for all periods after February 20, 1980. The claimant appealed to the Workers' Compensation Appeal Board and the Appeal.Board, by its order dated August 10, 1983, affirmed the Commissioner's decision.

We believe that the claimant's evidence did not sustain the fact that the disability from her original industrial injury continued beyond the February 20, 1980 date. Clearly, the automobile accident was an independent cause not related to her industrial accident. As we have previously pointed out under *Workman v. Workmen's Compensation Commissioner*, 160 W.Va. 656, 236 S.E.2d 236 (1977), and other authorities, an independent intervening cause

not attributable to the claimant's customary activity cannot be related back to the original occupational injury. We, therefore, conclude that the Commissioner and Appeal Board were correct in terminating the benefits as of February 20, 1980.

### III.

### THE CLAIM OF GRANT JEFFREY

On December 15, 1978, the claimant sprained his left ankle when he stepped on a lump of coal in the course of and as a result of his employment with Buffalo Mining Company. He filed a claim for workers' compensation benefits, and the claim was ruled compensable. The claimant was treated by Dr. Erwin R. Chillag. On April 13, 1979, Dr. Chillag issued a work slip indicating that the claimant could return to work on May 1, 1979. On April 30, 1979, Dr. Chillag again saw the claimant and his examination on that date revealed that the claimant had swelling in his ankle and a marked limp. Dr. Chillag then advised him that he should not attempt to return to work.

The Commissioner received notification that the claimant had been authorized to return to work as of May 1, 1979, and did not receive a later notification that the claimant's condition on April 30 prevented his return to work. Therefore, the Commissioner suspended temporary total disability benefits as of May 1, 1979.

In August, 1979, Dr. Chillag advised the Commissioner that the claimant had reached the maximum degree of improvement and recommended that the claimant be given a permanent partial disability evaluation. After receiving the results of the evaluation, the Commissioner, on November 12, 1979, granted the claimant a 10% permanent partial disability award.

On January 29, 1981, the claimant requested, by way of a petition to modify, that temporary total disability benefits be paid to him for the period May 1, 1979, to November 12, 1979, the date on which he received the 10% award. On February 27, 1981, the Commissioner ruled that the claimant was entitled to the temporary to-

tal disability benefits which he sought. The employer protested, and protest hearings were held.

Dr. Chillag testified during the protest hearings that even though he had issued a work slip for May 1, 1979, he saw the claimant on April 30, before he had returned to work, and concluded that the claimant should remain off work a little longer. Dr. Chillag stated that he continued to treat the claimant and on June 11, 1979, gave him a return to work slip.

According to Dr. Chillag, the claimant again returned on July 24, 1979, and was treated for a spur on his right heel. When asked whether the spur was in any way related to the claimant's compensable injury, Dr. Chillag responded that it was not. He indicated, however, that because of the spur, which was not related to the claimant's compensable injury to his left ankle, he kept the claimant off work from July 24, 1979, to December 10, 1979.

At the conclusion of the protest hearings, the Commissioner, on July 12, 1982, ruled that all temporary total disability benefits paid to the claimant beyond July 23, 1979, were overpayments and were recoverable under W.Va.Code, 23–4–1c. The claimant appealed to the Workers' Compensation Appeal Board. The Appeal Board, by its ruling dated July 12, 1983, affirmed the Commissioner's decision.

We believe the Commissioner and the Appeal Board were correct in establishing the July 23, 1979 date as the relevant point for terminating the temporary total disability award. The medical evidence after that date was undisputed that further medical treatment involved a bone spur on claimant's right heel and that this was unrelated to the sprained left ankle.

### IV.

### CONCLUSION

For the foregoing reasons, we reverse the decision of the Workers' Compensation Appeal Board in the appeal of Richard L. Wilson and affirm its decisions in the appeals of Karen L. Cook and Grant Jeffrey.

No. 15990—Reversed.

No. 16005—Affirmed.

No. 15993—Affirmed.