883 P.2d 73

Francisco B. DIAZ, Claimant–Appellant,

v.

OAHU SUGAR COMPANY, Employer–
Appellee, Self–Insured,

and

Acclamation Insurance Management
Services, Insurance Adjuster–
Appellee.

No. 16281.

Supreme Court of Hawai'i.

Oct. 24, 1994.

Rory Toomey (Erlinda Dominguez, Richard M. Berger, Thomas E. Walsh and Paul M. Dold with him on the brief, of the Law

Offices of Erlinda Dominguez), Honolulu, for claimant-appellant.

Laurie E. Keeno (Roland Q.F. Thom with her on the brief, of Char, Hamilton, Campbell & Thom), Honolulu, for employer-appellee, self-insured, and insurance adjuster-appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

RAMIL, Justice.

Claimant–Appellant Francisco B. Diaz appeals the decision and order of the Labor and Industrial Relations Appeals Board (Appeals Board) terminating his workers' compensation benefits. Diaz contends that the Appeals Board: (1) erred in concluding that the April 7, 1989 non-industrial motor vehicle accident caused an intervening injury that terminated his employer's workers' compensation liability; and (2) failed to apply the statutory presumption that a worker's claim is a covered work injury under Hawai'i Revised Statutes (HRS) § 386–85(1) (1985). We disagree and affirm the decision and order of the Appeals Board.

## I. *FACTS*

In 1986, Diaz was employed by Employer–Appellee Oahu Sugar Company (Oahu Sugar). On June 25, 1986, while "cutting seed" on the job, Diaz lost his balance and suffered an injury to his lower back, left hand, and left hip. Diaz subsequently complained of pain on his left side, and was examined by a physician. Diaz's medical expenses and temporary disability benefits were fully paid by his self-insured employer, Oahu Sugar.

Diaz was given several diagnostic tests to determine the extent of his injuries, including x-rays, computer tomography (CT) scans of his spine, and psychological evaluations. The results of the x-rays were negative; the CT scans showed some "bulging" and "protrusion" of several spinal disks, but no evidence of "herniation"; and several psychological evaluations suggested that Diaz was suffering from "a psychophysical disorder," disproportionate to his actual physical injuries.

On July 22, 1986, Diaz's attending physician, Dr. Salvador Cecilio, reported that he was unable to find an objective physical pathology to explain Diaz's symptoms. Dr. Cecilio treated Diaz "conservatively" with medication and referred him to physical therapy. Diaz continued physical therapy throughout the remainder of 1986. On January 9, 1987, Dr. Cecilio reported that Diaz was able to return to light duty. On February 10, 1987, Dr. Cecilio reiterated his belief that Diaz could return to light duty and that his ailments appeared to be mainly psychological.

From March 1987 through March 1989, Diaz periodically sought re-evaluation of his condition by Dr. Cecilio. However, during this two-year period, Dr. Cecilio repeatedly opined that Diaz's condition was "stable and stationary" and that Diaz was able to return to light duty work. On March 10, 1989, Dr. Cecilio reported that the "[patient's] complaints are essentially the same.... I really do not know what else I can do for him.... [I]n my opinion, the best treatment would be to return him to some type of light duty, get him out of the house and be productive."

On April 7, 1989, Diaz was involved in a non-industrial automobile accident in which his car was "rear-ended." Subsequently, Diaz consulted Dr. Cecilio for increased neck and back pain, which radiated to his hands and feet, and for "occipital" headaches. Dr. Cecilio diagnosed cervical and lumbosacral sprains and aggravation of pre-existing neck and back conditions. Dr. Cecilio again referred Diaz to physical therapy and suggested that Diaz consult Dr. Ramon Sy to evaluate newly arisen ear complaints. In February 1992, Diaz also underwent further psychological evaluation by Dr. Vincent Onorato.

In response to an inquiry from Diaz's auto insurer, Allstate Insurance Company (Allstate), Dr. Cecilio reported in a letter dated October 16, 1989, that he found it very difficult to apportion responsibility for Diaz's current symptoms. Dr. Cecilio stated that his "best shot" would be to allocate fifty percent to the pre-existing incidents and fifty percent to the accident. Consequently, Allstate paid only fifty percent of Diaz's medical expenses.

Diaz attempted to recover the other fifty percent from Oahu Sugar, which, until the

accident, had been paying Diaz's medical bills as a result of the June 25, 1986 work injury pursuant to HRS Chapter 386. By letter dated November 2, 1990, Oahu Sugar declined to pay any part of Diaz's medical bills accrued after the accident, contending that the accident was a "subsequent, intervening traumatic event for which Employer and Insurance Adjuster should not be responsible . . . until the Claimant [has] reached pre-automobile accident status."

On January 29, 1991, Diaz filed an employee's claim for workers' compensation benefits to contest Oahu Sugar's denial of payment of his post-accident medical expenses. On May 1, 1991, the Department of Labor and Industrial Relations (DLIR) held a hearing on Diaz's claim. At the hearing, Diaz argued that Oahu Sugar remained responsible for the fifty percent of his medical costs not paid by Allstate. Diaz based his argument on Dr. Cecilio's apportionment contained in his October 16, 1989 letter to Allstate and on a letter dated October 30, 1989 from Dr. Robert Hughes, in which he agreed with Dr. Cecilio's apportionment.

Conversely, Oahu Sugar argued that the accident constituted a new, non-industrial injury for which it was not responsible under the workers' compensation law. Oahu Sugar relied on a medical report by Dr. Roland Lichter, in which Diaz stated that the accident had greatly increased his symptoms in the low back, legs, left arm, and hand, and in which he also stated that he had not returned to pre-accident injury status. Oahu Sugar also relied on Dr. Cecilio's various reports prior to the accident, in which he opined that Diaz's condition had improved and stabilized, and in which he recommended that Diaz return to light duty.

On June 26, 1991, the DLIR issued its findings of fact and decision, holding that Oahu Sugar was not liable under HRS chapter 386 for any medical payments to Diaz after the April 7, 1989 motor vehicle accident. The DLIR, however, also held that Oahu

Sugar must continue paying temporary total disability benefits to Diaz "terminating at such time as is determined by the Director that such disability has ended."

On July 3, 1991, Diaz filed a notice of appeal with the Appeals Board pursuant to HRS § 386–87 (1985).[1] The parties waived a hearing before the Appeals Board and agreed to have the case decided on the record and on their respective written statements. The Appeals Board listed the following issues on appeal: (1) whether Oahu Sugar's liability for medical benefits was properly terminated on April 6, 1989; and (2) whether temporary total disability benefits should be terminated on April 6, 1989.

On June 16, 1992, the Appeals Board issued its decision and order in the case. The Appeals Board made twenty-two express findings of fact and concluded as a matter of law that "the April 7, 1989 non-industrial motor vehicle accident caused an intervening injury that terminates Oahu Sugar's liability for medical benefits as of April 6, 1989. Accordingly, Oahu Sugar is relieved of its responsibility for medical benefits, until such time when Claimant returns to pre-motor vehicle accident status." The Appeals Board further concluded that the DLIR mistakenly continued the payment of temporary total disability benefits to Diaz, and held that "the 1989 intervening injury also terminates temporary total disability benefits."

This timely appeal followed.

## II. *DISCUSSION*

### A.

Appeals to the Hawai'i Supreme Court from the Appeals Board are governed by HRS § 91–14(g) (1985) of the Hawai'i Administrative Procedure Act. HRS § 91–14(g) provides:

Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further

---

1. HRS § 386–87 provides in relevant part that "[a] decision of the director shall be final and conclusive between the parties . . . unless within twenty days after a copy has been sent to each party, either party appeals therefrom to the appellate board[.]" HRS § 386–87 further provides that the board shall hold a full hearing de novo on the appeal, and that the board "may affirm, reverse or modify any compensation case upon review, or remand the case to the director for further proceedings and action." HRS § 386–87(c).

proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

    (1) In violation of constitutional or statutory provisions; or

    (2) In excess of the statutory authority or jurisdiction of the agency; or

    (3) Made upon unlawful procedure; or

    (4) Affected by other error of law; or

    (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

    (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

HRS § 91–14(g) (1985); *Sussel v. Civil Serv. Comm'n*, 74 Haw. 599, 608–09, 851 P.2d 311, 316–17, *reconsideration denied*, 74 Haw. 650, 857 P.2d 600 (1993).

[A]ppeals taken from findings set forth in decisions of the Board are reviewed under the clearly erroneous standard. Thus, this court considers whether such finding[s are] clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. The clearly erroneous standard requires this court to sustain the Board's findings unless the court is left with a firm and definite conviction that a mistake has been made.

A conclusion of law [ ] is not binding on an appellate court and is freely reviewable for its correctness. Thus, this court reviews [conclusions of law] *de novo*, under the right/wrong standard.

*Tate v. GTE Hawaiian Tel. Co.*, 77 Hawai'i 100, 102–03, 881 P.2d 1246, 1248–49 (1994) (internal citations, internal quotation marks, and footnote omitted). Against this standard, we address the merits of Diaz's appeal.

### B.

Diaz contends that the Appeals Board erred in concluding that the April 7, 1989 non-industrial motor vehicle accident caused an intervening injury that terminated Oahu Sugar's liability. Diaz challenges the Appeals Boards' two conclusions of law which provided in relevant part:

    1. We conclude that the Director properly terminated medical benefits as of April 6, 1989. We find that the non-industrial motor vehicle accident of April 7, 1989, caused an intervening injury that significantly worsened Claimant's orthopedic and psychiatric conditions[.]

    . . . .

    For the above reasons, we conclude that the April 7, 1989 non-industrial motor vehicle accident caused an intervening injury that terminated Employer/Insurance Adjuster's liability benefits as of April 6, 1989. Accordingly, Employer/Insurance Adjuster is relieved of its responsibility for medical benefits, until such time when Claimant returns to pre-motor vehicle accident status.

    2. We conclude that temporary total disability benefits should also be terminated on April 6, 1989. The April 7, 1989 non-industrial motor vehicle accident caused an intervening injury that terminated Employer/Insurance Adjuster's liability for medical benefits. We believe that the 1989 intervening injury also terminated temporary total disability benefits.

■ Generally, "a subsequent injury, whether an aggravation of the original injury or a new and distinct injury, is compensable if it is the direct and natural result of a compensable primary injury." 1 A. Larson, *The Law of Worker's Compensation* § 13.11, at 3–503 (1993). The subsequent worsening of the original condition continues to be compensable so long as the deterioration does not result from an intervening non-industrial cause. *Id.* § 13.11(a), at 3–510.

■ Under the "direct and natural result" standard, subsequent injuries that are a direct and natural result of the original injury also arise out of and in the course of employment. The rationale is that the employee's pre-existing condition was caused by an employment-induced risk, thereby permitting the imposition of liability upon the employer. 1 *Modern Workers Compensation* § 116:1 (M. Canavan ed. 1993). Therefore, this court

adopts the direct and natural result standard to determine whether compensability should be extended to a subsequent injury.

■ The application of this standard should not be determined by the length of time that has elapsed between the original and the subsequent injury. Thus, the test is: (1) whether any causal connection exists between the original and subsequent injury; and, if so, (2) whether the cause of the subsequent injury is attributable to some activity that would be customary in light of the claimant's condition.

In *Wilson v. Workers' Compensation Comm'r*, 174 W.Va. 611, 328 S.E.2d 485 (W.Va.1984), the West Virginia Supreme Court of Appeals consolidated three workers' compensation cases on appeal. The issue in these cases was the legal standard to be applied in reopening cases when the claimant's original injury has been aggravated due to a non-work related incident. The court applied the "direct and natural result" standard to all three cases.

### 1.

In the first case, the *Wilson* court held that reopening was proper where a worker who had returned to work after a back injury, continued to suffer from back pain while working, and suffered a recurrence of back problems while playing with his child on Christmas Day. The court stated that the claimant was not foreclosed from demonstrating that the original injury became aggravated by some "routine event." The court defined a "routine event" as one "where the claimant is doing an activity that would be customary in light of his condition." *Id.* at 616, 328 S.E.2d at 490.

### 2.

In the second case, the *Wilson* court held that reopening was improper for a claimant whose recurrence of disability was due to an intervening automobile accident. Initially, the claimant was struck on the right side of her neck by a steel bar in the course of and as a result of her employment. Soon after, she was involved in an automobile accident injuring her right shoulder, chest, head, and neck. An examining physician found that her original neck injuries had stabilized but attributed her current neck injuries to the subsequent automobile accident. The court concluded that the automobile accident was an "independent intervening cause" that terminated workers' compensation benefits. The court explained that "an independent intervening cause not attributable to the claimant's customary activity cannot relate back to the original occupational injury." *Id.* at 617, 328 S.E.2d at 491.

### 3.

In the third case, the *Wilson* court held that reopening was improper for a claimant whose inability to return to work was due to a bone spur that was unrelated to his original compensable ankle injury. *Id.* at 617–18, 328 S.E.2d at 491–92. In its holding, the court required at least some causal connection between the original and subsequent injury before reopening the case.

### 4.

■ Like the claimant in the second case of *Wilson*, Diaz suffered compensable physical injuries arising out of and in the course of his employment in 1986. Diaz was re-injured in a subsequent non-industrial motor vehicle accident on April 7, 1989. As in the second case, the record in the instant case provides ample evidence to support the Appeals Board's conclusion that Diaz's disability after April 7, 1989, was not the direct and natural result of his 1986 industrial injury.

For example, after the non-industrial motor vehicle accident of April 7, 1989, Diaz reported a significant increase in back and neck symptoms, as well as new symptoms consisting of occipital headaches and ear pains. After extensive evaluation and treatment, Dr. Cecilio diagnosed cervical and lumbar sprains and an aggravation of preexisting neck and back conditions with considerable "functional overlay." Dr. Sy opined that Diaz's ear condition was a result of the April 7, 1989 motor vehicle accident. In addition, a MRI scan revealed herniated disc fragments that were not present when diagnostic tests were performed before the accident. From a psychiatric standpoint, it was opined that

Diaz suffered from an adjustment reaction as a result of the non-industrial motor vehicle accident. Most importantly, Diaz's condition was "stable and stationary" before the April 7, 1989 non-industrial motor vehicle accident.

Assuming *arguendo*, however, that there is an attenuated causal connection between the two injuries, Diaz's subsequent injuries were not caused by an activity that would be customary in light of his condition. Diaz's subsequent injuries were caused by an automobile accident—an independent intervening cause not attributable to Diaz's customary activity. Thus, the independent cause cannot relate back to Diaz's original occupational injury.

In light of the above, we hold that the Appeals Board did not err in concluding that Diaz's disability after April 7, 1989 was not the direct and natural result of Diaz's original compensable injuries. Accordingly, the Appeals Board correctly determined that the consequent medical expenses attributable to Diaz's non-industrial motor vehicle accident are not covered by HRS chapter 386. Therefore, the Appeals Board was also correct in concluding that Oahu Sugar is not liable for temporary total disability payments to Diaz.

## C.

■ Diaz next contends that this court must reverse the Appeals Board's decision based on the statutory presumption contained in HRS § 386–85(1), which provides that "[i]n any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary: (1) [t]hat the claim is for a covered work injury[.]" Diaz notes that in applying HRS § 386–85(1), this court has placed a heavy burden on the employer to overcome the presumption and that cases have liberally construed the statutory language in order to effectuate the humanitarian purposes of the workers' compensation act.

Diaz's reliance on HRS § 386–85(1) is misplaced. On appeal, Diaz has not challenged any of the twenty-two express findings of fact made by the Appeals Board. Among the Appeals Board's twenty-two findings of fact,

finding no. 13 states that "[on] April 7, 1989, [Diaz] injured his neck and back in a non-industrial motor vehicle accident." Therefore, it is undisputed that Diaz's auto accident resulted in non-work related injuries for which payment under the workers' compensation law is not mandated, and for which Oahu Sugar is accordingly not liable. The statutory presumption of HRS § 386–85(1), however, concerns the issue whether a given claim is the result of a covered work injury. Because Diaz has conceded that the accident was not work-related, the statutory presumption of HRS § 386–85(1) is not triggered. Therefore, we find Diaz's argument to be without merit.

## III. *CONCLUSION*

We hold that the Appeals Board did not err in concluding that Diaz's disability after April 7, 1989 was not the direct and natural result of Diaz's original compensable injuries. Accordingly, we affirm the decision and order of the Appeals Board terminating Diaz's workers' compensation benefits "until such time [as Diaz] returns to pre-motor vehicle accident status."