CRAIG A. GOMES, Claimant-Appellant,
v.
HAWAIIAN ELECTRIC COMPANY, INC., Employer-Appellee, Self-Insured.
No. 27816.
Intermediate Court of Appeals of Hawaii.
June 30, 2008.
On the briefs:
Craig Gomes, Claimant-Appellant pro se.
Karen R. Tashima, Keith M. Yonamine, (Law Offices of Brian G.S. Choy), for Employer-Appellee.

MEMORANDUM OPINION
FOLEY, Presiding Judge, FUJISE, and LEONARD, JJ. [OJ]
Claimant-Appellant Craig A. Gomes (Gomes) appeals from the Decision and Order filed on January 11, 2006 and the Order Denying Request for Reconsideration filed on February 13, 2006 by the Labor and Industrial Relations Appeals Board (LIRAB). The LIRAB granted summary judgment in favor of Employer-Appellee Hawaiian Electric Company, Inc., (HECO) and against Gomes, thus affirming the April 25, 2003 Decision of the Director of the Department of Labor and Industrial Relations Disability Compensation Division (DLIR-DCD).
On appeal, Gomes contends the LIRAB erred by: (1) not dismissing or striking HECO's untimely motion for summary judgment; (2) using Findings of Fact and legal arguments not presented by Gomes, HECO, or the DLIR-DCD Director, contrary to Hawaii Rules of Civil Procedure (HRCP) Rule 56 and case law; (3) failing to find a causal connection between the original injury and subsequent injury; and (4) not ruling whether picking up a light box constituted an "independent intervening cause" or a routine activity.

I. BACKGROUND
On November 8, 1989, while employed by HECO, Gomes injured the right side of his neck and shoulder when he was looking up tracing a drain line and stepped backwards from a metal grate down a one-foot drop onto a concrete block (hereinafter, Accident). Gomes' injury arose out of and in the course of his employment and was not disputed by HECO. Gomes was treated by C.P. Lau, M.D., and received physical therapy and traction. Dr. Lau opined on January 8, 1990, that Gomes' neck/shoulder condition was resolving.
On January 16, 1990, Gomes sought treatment for his upper back and trapezii from Dr. Rex Niimoto, a chiropractor. On February 26, 1990, Gomes complained of upper and middle back pain and stiffness after twisting his back at work while trying to avoid spilling a cup of hot tea on himself. Dr. Niimoto found that Gomes had cervical, thoracic and lumbar subluxations accompanied by sprain and strain and spasm of the neck extensors, trapezii, and sacrospinalis muscles.
On September 27, 1990, Leo Maher, M.D., conducted an examination of Gomes. Gomes stated that immediately after his Accident, he experienced pain in his low back and a couple of days later in his shoulder. Dr. Maher found that Gomes' right shoulder pain had been more or less resolved with cortisone shots and Gomes was complaining of low back pain and low back muscle tightness with radiation into the right lower extremity. Dr. Maher ordered a CT scan of Gomes' lumbar spine; the scan revealed bilateral spondylolysis[1] at L5.
On February 28, 1991, Dr. Niimoto stated that Gomes had attained maximum medical improvement and a permanent partial disability rating could be done.
On December 6, 1991, Gomes was seen by Cedric Akau, M.D., who noted that Gomes was requesting the reopening of his Accident case because he had pain in his lower back. Dr. Akau stated that Gomes had a history of spondylolysis prior to the Accident (as evidenced by Gomes' 1984 X-ray showing spondylolysis at L5), and Dr. Akau recommended therapy.
On December 8, 1992, Gomes saw Dr. Akau, who noted that Gomes was doing relatively well and had made significant progress in the Patients in Transition program with his independent exercise program. Dr. Akau closed Gomes' case on March 30, 1993.
On March 31, 1993, Gomes aggravated his underlying back pain problem while playing sports. Dr. Akau noted on April 3, 1993, that Gomes was nearly back to his baseline levels and his present back pain was due directly to his sports activities, but Gomes felt that his continued back pain was related to the Accident because he did not have back pain discomfort prior to the Accident. Dr. Akau believed that Gomes' pain was related to his spondylolysis, which was present before the Accident, but not symptomatic.
On November 2, 1993, Gomes was evaluated by Alfred Gima, M.D., who determined that Gomes had a 2.5% combined impairment to his cervical spine and whole person as a result of the Accident. Dr. Gima also found that Gomes had no rateable impairment for his lumbar spine as a result of the Accident because of Gomes' pre-existing spondylolysis in his lumbar spine.
In 1999 and 2001, Gomes again sought treatment from Dr. Akau for back pain, which reoccurred when Gomes stopped using pain medication for his carpal tunnel syndrome. On October 2, 2001 and April 9, 2002, Dr. Akau determined that Gomes had been overall stable for the past year.
On July 29, 2002, Gomes was stooping to pick up a five-pound box off the floor at his home and his lower back began to hurt (hereinafter 7/29/02 injury). Gomes saw Dr. Akau and related to Dr. Akau that this injury should be covered by workers' compensation because the treatments for his prior back pain had been covered by workers' compensation. Dr. Akau examined Gomes and found that the incident had temporarily aggravated Gomes' back injury, but Gomes had returned to baseline levels by August 5, 2002.
On August 26, 2002, Gomes requested a hearing before the DLIR-DCD. Gomes' position was that HECO should be liable for workers' compensation benefits for the period 7/29/2002 through 8/4/2002, medical treatment with Dr. Akau, and temporary total disability benefits from 7/31/2002 through 8/4/2002. On April 25, 2003, the DLIR-DCD issued its Decision, in which it decided that HECO was not liable to Gomes for medical treatment or Total Temporary Disability associated with the 7/29/02 injury. Gomes appealed the Director's decision to the LIRAB on May 12, 2003. The LIRAB scheduled trial for January 10, 2006.
Gomes filed a motion for summary judgment, pursuant to HRCP Rule 56, on November 18, 2005. In his motion, Gomes averred that there were no genuine issues of material fact and that only a question of law remained. On December 16, 2005, HECO filed its motion for summary judgment, pursuant to Hawaii Administrative Rules (HAR) § 12-47-32, and claimed that it was entitled to a judgment as a matter of law based on the evidence and undisputed facts. On December 21, 2005, Gomes filed a motion to strike or dismiss HECO's motion for summary judgment because HECO had not filed its motion 50 days before the date of the trial as required by HRCP Rule 56(b).
At the summary judgment hearing on December 29, 2005, the LIRAB heard both motions, despite objections by Gomes that HECO's motion was untimely and was not scheduled for that day. Gomes agreed with HECO's undisputed facts in its motion for summary judgemnt, HECO agreed with all but one of Gomes' undisputed facts in his motion for summary judgment, and Gomes stated that there were no disputed material facts. On January 11, 2006, the LIRAB issued its Decision and Order. The LIRAB granted HECO's motion for summary judgment, denied Gomes' motions for summary judgment and to strike or dismiss HECO's summary judgment motion, and set forth its Findings of Fact (FOFs) and Conclusions of Law (COLs). On February 10, 2006, Gomes filed a request for reconsideration, which the LIRAB denied on February 13, 2006. Gomes filed a timely notice of appeal on March 14, 2006.

II. STANDARDS OF REVIEW

A. Administrative Agency Appeals From LIRAB
Appellate review of a LIRAB decision is governed by [Hawaii Revised Statutes (HRS)] § 91-14(g) (1993), which states that:
Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
(1) In violation of constitutional or statutory provisions; or
(2) In excess of the statutory authority or jurisdiction of the agency; or
(3) Made upon unlawful procedure; or
(4) Affected by other error of law; or
(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
We have previously stated:
[Findings of Fact] are reviewable under the clearly erroneous standard to determine if the agency decision was clearly erroneous in view of reliable, probative, and substantial evidence on the whole record.
[Conclusions of Law] are freely reviewable to determine if the agency's decision was in violation of constitutional or statutory provisions, in excess of statutory authority or jurisdiction of agency, or affected by other error of law.
A [Conclusion of Law] that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the conclusion is dependent upon the facts and circumstances of the particular case. When mixed questions of law and fact are presented, an appellate court must give deference to the agency's expertise and experience in the particular field. The court should not substitute its own judgment for that of the agency.
Igawa v. Koa House Rest. 97 Hawai`i 402, 405-06, 38 P.3d 570, 573-74 (2001) (internal quotation marks, citations, and brackets in original omitted) (quoting In re Water Use Permit Applications, 94 Hawai`i 97, 119, 9 P.3d 409, 431 (2000)).
An FOF or a mixed determination of law and fact is clearly erroneous when (1) the record lacks substantial evidence to support the finding or determination, or (2) despite substantial evidence to support the finding or determination, the appellate court is left with the definite and firm conviction that a mistake has been made. We have defined "substantial evidence" as credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.
In re Water Use Permit Applications, 94 Hawaii at 119, 9 P.3d at 431 (internal quotation marks and citations omitted).

B. Motion for Summary Judgment
"We review the circuit court's grant or denial of summary judgment de novo." Querubin v. Thronas, 107 Hawai`i 48, 56, 109 P.3d 689, 697 (2005) (quoting burette v. Aloha Plastic Recycling, Inc. 105 Hawai`i 490, 501, 100 P.3d 60, 71 (2004)). "Under the de novo standard, `we examine the facts and answer the question without being required to give any weight to the circuit court's answer to it.'" Hawai`i Ventures, LLC, v. Otaka, Inc., 114 Hawaii 438, 457, 164 P.3d 696, 715 (2007) (citing Chun v. Bd. of Trs. of Employees' Ret. Sys., 92 Hawai`i 432, 438-39, 992 P.2d 127, 133-34 (2000)).
The Hawai`i Supreme Court has often articulated that
summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.
Querubin, 107 Hawai`i at 56, 109 P.3d at 697 (quoting Durette, 105 Hawaii at 501, 100 P.3d at 71).

III. DISCUSSION
Gomes argues in his first point of error that the LIRAB erred when it chose to hear HECO's motion for summary judgment, despite HECO's noncompliance with HRCP Rule 56. Rule 56(a) requires that "a motion seeking relief under this rule shall be served and filed no less than 50 days before the date of the trial unless granted permission by the court and for good cause shown." Gomes asserts that because HECO filed its summary judgment motion less than fifty days before trial, its motion should not have been heard.
During the summary judgment hearing, Gomes argued that because he received a letter stating that the hearing was for his motion only, the LIRAB should not have addressed HECO's motion that day. Assuming arguendo that the LIRAB erred in addressing HECO's motion, such error was harmless. Gomes and HECO essentially agreed on the facts and issues in the other's motion. There was no prejudice to Gomes in hearing both motions on the same day.
The HRCP are binding upon the LIRAB only if so set forth in a specific HAR (e.g., HAR § 12-47-31  discovery by deposition, written interrogatories, and production of documents obtained in manner and effect prescribed by HRCP). When ruling on a summary judgment motion, the LIRAB is governed by HAR § 12-47-32,[2] which does not impose a filing deadline for the moving party. Thus, because HECO filed its motion for summary judgment pursuant to HAR § 12-47-32, we defer to the LIRAB's interpretation and find that it did not err by failing to strike or dismiss HECO's motion. Tam v. Kaiser Permanente, 94 Hawai`i 487, 490, 17 P.3d 219, 222 (2001) (LIRAB's interpretation of its own rules is given deference).
In arguing his second point of error, Gomes does not assert that the LIRAB erred in its FOF, but rather that it made FOFs and legal arguments not presented by Gomes, HECO, or the DLIR-DCD Director, contrary to HRCP Rule 56 and case law. Although the HRCP are not binding on the LIRAB, a summary judgment ruling must be limited to the undisputed facts presented. To the extent Gomes and HECO did not present or take positions on facts, such facts could not be taken as undisputed and considered by the LIRAB when making its summary judgment ruling.
As to Gomes third point of error, upon examination of the undisputed facts in both Gomes' and HECO's motions, we conclude that HECO was not entitled to judgment as a matter of law. Only the undisputed facts should have been considered, and these facts, taken from both motions, are summarized below:
1. On November 8, 1989, [Gomes] was in the employ of [HECO]; on said date, [Gomes] sustained a personal injury to the low back by accident arising out of and in the course of employment; said injury was not caused by [Gomes'] willful intention to injure himself or another or by intoxication.
2) Cedric K. Akau, M.D. is [Gomes'] attending physician and has provided treatment for the November 8, 1989 back injury.
3) In his October 2, 2001 and April 9, 2002 reports, Dr. Akau opined that [Gomes] had been overall relatively stable and stationary for at least a year and a half and recent medical treatment had consisted solely of follow-up visits. Therefore, [Gomes] had achieved baseline measurements for the November 8, 1989 injury and was considered medically stable.
4) On July 29, 2002, while stooping to retrieve a light box from under the stairwell storage area in his townhouse, [Gomes'] low back started to hurt, getting really tight and sore. [Gomes] estimated the weight of the box to be approximately five pounds.
5) On July 29, 2002, as a result of [Gomes] stooping to retrieve a box under a stairwell at home, [Gomes] subsequently took increased doses of medication and sought treatment with Dr. Akau because of the increased pain he experienced as a result of his action on July 29, 2002.
6) Dr. Akau's July 31, 2002 and August 5, 2002 clinical notes reflect that [Gomes] was squatting down getting out underneath a stairwell carrying a box of material at home when he aggravated his back and experienced increased pain on July 29, 2002. Dr. Akau's impression/diagnosis for the July 29, 2002 incident was mechanical back pain as before aggravated by recent lifting incidents. Dr. Akau opined, "since he not back at baseline, we will hold off getting him back to work until I see him on Monday[.]"
7) In Dr. Akau's August 5, 2002 note, [Gomes] was noted to be pretty much back to baseline, not much back pain, just his usual, no new symptom, no radicular symptoms.
8) Dr. Akau's letter of October 17, 2002 opined that [Gomes] had suffered a temporary aggravation of his back pain/injury on July 29, 2002 and that his back injury returned to its baseline measurement levels on August 5, 2002.
9) The period of disability was for six days, from 7/29/2002 through 8/4/2002.
The Hawaii Supreme Court has held that "in any proceeding on a claim for compensation due to an alleged compensable consequence of a work-related injury, HRS § 386-85 creates a presumption in favor of the claimant that the subsequent injury is causally related to the primary injury."[3] Korsak v. Permanente Med. Group, Inc., 94 Hawai`i 297, 307, 12 P.3d 1238, 1248 (2000).[4] "[T]he burden is on the employer to rebut the presumption that the secondary injury is causally related to the primary injury." Davenport v. City & County of Honolulu, 100 Hawaii 481, 494, 60 P.3d 882, 895, aff'd, 100 Hawaii 481, 60 P.3d 882 (2002). Thus, HECO must provide substantial evidence[5] to rebut Gomes' claim. Korsak, 94 Hawai`i at 307, 12 P.3d at 1248 ("The claimant must prevail if the employer fails to adduce substantial evidence that the injury is unrelated to employment.").
In Diaz v. Oahu Sugar Co. 77 Hawaii 152, 156, 883 P.2d 73, 77 (1994), the Hawaii Supreme Court adopted a two-part test to determine whether a subsequent non-work related injury was a direct and natural result of a prior compensable injury: (1) whether any causal connection exists between the original and subsequent injury; and, if so, (2) whether the cause of the subsequent injury is attributable to some activity that would be customary in light of the claimant's condition." Id.
Based on the undisputed facts in the record on summary judgment, the LIRAB erred in concluding, as a matter of law, that there was no substantial evidence that a "causal connection" existed between the November 8, 1989 and July 29, 2002 injuries. Although Gomes' injuries occurred almost thirteen years apart, "[t]he application of [the direct and natural result] standard should not be determined by the length of time that has elapsed between the original and the subsequent injury." Id. at 156, 883 P.2d at 77. Moreover, Dr. Akau's October 17, 2002 letter opined that "Gomes had suffered a temporary aggravation of his back pain/injury on July 29, 2002." This indicates that Gomes was suffering from back pain/injury prior to the 7/29/02 injury. Based on the facts given, it is unclear what caused the back injury that was "aggravated" by Gomes on July 29, 2002. For although Gomes November 8, 1989 injury was considered "medically stable," the facts do not indicate another cause for Gomes' back condition immediately prior to July 29, 2002. HECO thus failed to present substantial evidence that the two incidents were not causally connected.
Even if a "causal connection" did exist between Gomes' two injuries, the subsequent injury must still be "customary in light of [Gomes'] condition[,]" and not an "independent intervening cause." Id. at 156, 883 P.2d at 77. The court in Diaz relied on Wilson v. Workers Compensation Commissioner, 174 W. Va. 611, 328 S.E.2d 485 (1984), a West Virginia Supreme Court opinion, which analyzed "customary" and "intervening" events. In Wilson, the court stated that
if a worker's compensation claimant shows that he received an initial injury which arose out of and in the course of his employment, then every normal consequence that flows from the injury likewise arises out of the employment. If, however, a subsequent aggravation of the initial injury arises from an independent intervening cause not attributable to the claimant's customary activity in light of his condition, then such aggravation is not compensable.
Thus, the fact that the claimant is injured and then returns to work does not mean that he is foreclosed from demonstrating that the original injury became aggravated by some routine event which triggered its recurrence. Such routine event is ordinarily one where the claimant is doing an activity that would be customary in light of his condition.
Id. at 616, 328 S.E.2d at 490. The West Virginia supreme court also cited to several cases where "courts have recognized that a claimant with an original occupationally created back injury can recover where it has been aggravated by some routine occurrence at home." Id. at 615, 328 S.E.2d at 489. One of the examples cited was Schaefer v. Williamston Community Schools, 117 Mich. App. 26, 323 N.W.2d 577 (1982), in which "the claimant, after injuring his back in February of 1976, returned to work in March of that year. In August of 1977, while moving some boxes at home, his back injury recurred. There was evidence that he had continued to have episodes of back pain after he returned to work. The reopening was permitted." Wilson, 174 W. Va. at 616, 328 S.E.2d at 490.
Thus, because lifting a five-pound box may, upon remand, be found to be customary in light of Gomes' condition and it remains unclear whether the July 29, 2002 incident was "causally connected" to the November 8, 1989 injury, summary judgment should not have been granted to HECO.

IV. CONCLUSION
We vacate the January 11, 2006 Decision and Order and the February 13, 2006 Order Denying Request for Reconsideration entered by the Labor and Industrial Relations Appeals Board and remand this case for further proceedings consistent with this opinion.
NOTES
[1] Spondylolysis is the dissolution of a vertebra. Dorland's Illustrated Medical Dictionary 1743 (30th ed. 2003).
[2] § 12-47-32. Motions, generally.

(a) Form. All motions, except when made during a trial, shall be in writing, state the grounds for the motion, set forth the relief or order sought, and be accompanied by a memorandum in support of the motion. If the motion requires consideration of facts not appearing in the record, it shall be supported by an affidavit. Every motion shall indicate whether a hearing is requested on the motion and shall be accompanied by a notice of hearing. Motions shall be served in accordance with section 12-47-18.
(b) Responsive memoranda. An opposing party may serve and file counter affidavits and a written statement of reasons in opposition to the motion and of the authorities relied upon not later than five business days before the date of the hearing. If the hearing on the motion is scheduled within five business days after the motion is filed, then such response shall be served and filed at least one business day before the time set for hearing.
(c) Required notice; effect of failure to appear. A party who does not oppose a motion or who intends to support a motion or who desires a continuance shall notify the board and the opposing parties within five business days before the date of the hearing. If the hearing on the motion is scheduled within five business days after the motion is filed, the board shall be notified within one business day before the time set for hearing. Failure to appear at the hearing may be deemed a waiver of objections to the granting of the motion.
(d) If a hearing on the motion is not requested, the board may decide the matter upon the pleadings, memoranda, and other documents filed.
[3] HRS § 386-85(1) (1993) provides as follows:

§ 386-85 Presumptions. In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary:
(1) That the claim is for a covered work injury[.]
[4] "[W]e construe the use of the word `any' [in HRS § 386-85] to mean that the presumption applies in all proceedings conducted pursuant to the workers' compensation chapter." Korsak, 94 Hawai`i at 306, 12 P.3d at 1247.
[5] "The term `substantial evidence' signifies a high quantum of evidence which, at the minimum, must be `relevant and credible evidence of a quality and quantity sufficient to justify a conclusion by a reasonable man that an injury or death is not work connected.'" Korsak, 94 Hawai`i at 307-08, 12 P.3d at 1248-49 (emphasis in original omitted) (quoting Chung v. Animal Clinic, Inc. 63 Haw. 642, 650, 636 P.2d 721, 726-27 (1981)).